**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | No. 10 Civ. 4791 (LAK) ECF Case |
| Plaintiff, | |
| v. | |
| ICP ASSET MANAGEMENT, LLC, et al., | |
| Defendants. | |

**ICP DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

## TABLE OF CONTENTS

I.      INTRODUCTION/GENERAL INSTRUCTIONS..................................................... 1

        A.      JUROR ATTENTIVENESS ...................................................................... 1

        B.      ROLE OF THE COURT............................................................................ 2

        C.      ROLE OF THE JURY ............................................................................... 3

        D.      COMMON COUNSEL............................................................................. 4

        E.      BURDEN OF PROOF .............................................................................. 5

        F.      PREPONDERANCE OF THE EVIDENCE ........................................... 6

        G.      WHAT IS EVIDENCE............................................................................. 7

        H.      WHAT IS NOT EVIDENCE .................................................................... 8

        I.      "DIRECT" AND "CIRCUMSTANTIAL" EVIDENCE DEFINED..................... 9

        J.      CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE ................... 10

        K.      CHARTS AND SUMMARIES RECEIVED IN EVIDENCE ........................... 11

        L.      STIPULATION OF FACTS ................................................................... 12

        M.      WITNESS CREDIBILITY ..................................................................... 13

        N.      CAUTION AS TO COOPERATING WITNESS.................................... 15

        O.      EXPERT WITNESSES - GENERALLY ................................................. 16

        P.      EVIDENCE OF DEFENDANT'S COMPENSATION AND
                WEALTH................................................................................................ 17

        Q.      MULTIPLE DEFENDANTS.................................................................. 18

        R.      SEPARATE CLAIMS ........................................................................... 19

        S.      ALL PARTIES EQUAL BEFORE THE LAW....................................... 20

        T.      EVIDENCE FOR LIMITED PURPOSES.............................................. 21

        U.      PRESUMPTION OF REGULARITY .................................................... 22

II.     SECURITIES FRAUD CLAIMS GENERALLY ............................................... 23

        A.      INTRODUCTORY INSTRUCTION ON THE FEDERAL
                SECURITIES LAWS.............................................................................. 23

        B.      NO STRICT LIABILITY ...................................................................... 24

III.    SECTION 17(A) OF THE SECURITIES ACT.................................................... 25

        A.      SECTION 17(A) GENERALLY ............................................................ 25

        B.      ELEMENTS OF SECTION 17(A)(1) .................................................... 26

                1.      FIRST ELEMENT – UNTRUE STATEMENT ....................................... 27

                2.      FIRST ELEMENT – MATERIALITY.................................................... 29

3.     FIRST ELEMENT – UNTRUE STATEMENT – UNANIMITY ........................................................ 31

4.     SECOND ELEMENT – CONDUCT "IN CONNECTION WITH" THE SALE OF A SECURITY ...................... 32

5.     THIRD ELEMENT – DOMESTIC TRANSACTION ............................ 34

6.     FOURTH ELEMENT – INTENT TO DEFRAUD .................................. 35

7.     FIFTH ELEMENT – INSTRUMENTALITIES OF INTERSTATE COMMERCE .................................................. 37

8.     GOOD FAITH .......................................................................... 38

C.     ELEMENTS OF SECTIONS 17(A)(2) AND (3) .................................. 40

1.     FIRST ELEMENT – UNTRUE STATEMENT ...................................... 42

2.     FIRST ELEMENT – MATERIALITY .................................................. 43

3.     FIRST ELEMENT – UNTRUE STATEMENT – UNANIMITY ........................................................................... 44

4.     SECOND ELEMENT – OBTAIN MONEY OR PROPERTY ............... 45

5.     THIRD ELEMENT – CONDUCT "IN CONNECTION WITH" THE SALE OF A SECURITY. .................................... 46

6.     FOURTH ELEMENT –  DOMESTIC TRANSACTION ....................... 47

7.     FIFTH ELEMENT – NEGLIGENCE .................................................. 48

8.     SIXTH ELEMENT –  INSTRUMENTALITIES OF INTERSTATE COMMERCE .................................................. 49

IV.     SECTION 10(B) OF THE SECURITIES EXCHANGE ACT AND SEC RULE 10B-5 ......................................................................... 50

A.     PRIMARY VIOLATION .................................................................. 50

1.     ELEMENTS OF SECTION 10(B) .................................................... 50

a.     FIRST ELEMENT – UNTRUE STATEMENT ........................... 51

b.     FIRST ELEMENT – MATERIALITY ........................................ 52

c.     FIRST ELEMENT – UNTRUE STATEMENT – UNANIMITY ........................................................................... 53

d.     FIRST ELEMENT – "IN CONNECTION WITH" THE PURCHASE OR SALE OF A SECURITY ................................. 54

e.     SECOND ELEMENT –  DOMESTIC TRANSACTION ....................................................................... 56

f.     THIRD ELEMENT – INTENT TO DEFRAUD .......................... 57

g.     FOURTH ELEMENT –  INSTRUMENTALITIES OF INTERSTATE COMMERCE ...................................... 58

h. GOOD FAITH ............................................................................ 59

B. AIDING AND ABETTING...................................................................... 60

1. AIDING AND ABETTING – ELEMENTS............................................. 60

2. AIDING AND ABETTING – PRIMARY VIOLATION ........................ 61

3. AIDING AND ABETTING – ACTUAL KNOWLEDGE...................... 62

4. AIDING AND ABETTING – SUBSTANTIAL ASSISTANCE ............. 63

5. AIDING AND ABETTING – UNANIMITY.......................................... 64

V. SECTION 15(C)(1)(a) CLAIM ....................................................................... 65

A. PRIMARY VIOLATION ........................................................................ 65

1. FIRST ELEMENT – UNTRUE STATEMENT ...................................... 66

2. FIRST ELEMENT – MATERIALITY.................................................... 67

3. FIRST ELEMENT – UNTRUE STATEMENT –
UNANIMITY ........................................................................................ 68

4. FIRST ELEMENT – "IN CONNECTION WITH" THE
TRANSACTION, PURCHASE OR SALE OF A SECURITY ............... 69

5. SECOND ELEMENT – DOMESTIC TRANSACTION ........................ 70

6. THIRD ELEMENT – INTENT TO DEFRAUD ..................................... 71

7. FOURTH ELEMENT – INSTRUMENTALITIES OF
INTERSTATE COMMERCE ................................................................ 72

8. GOOD FAITH ....................................................................................... 73

B. AIDING AND ABETTING – ELEMENTS........................................... 74

1. AIDING AND ABETTING – PRIMARY VIOLATION ........................ 75

2. AIDING AND ABETTING – ACTUAL KNOWLEDGE...................... 76

3. AIDING AND ABETTING – SUBSTANTIAL ASSISTANCE ............. 77

4. AIDING AND ABETTING – UNANIMITY.......................................... 78

VI. ADVISERS ACT CLAIMS ............................................................................ 79

A. SECTION 206 GENERALLY................................................................ 79

B. SECTION 206(1) – ELEMENTS .......................................................... 80

1. FIRST ELEMENT – UNTRUE STATEMENT ...................................... 81

2. FIRST ELEMENT – MATERIALITY.................................................... 83

3. FIRST ELEMENT – UNTRUE STATEMENT –
UNANIMITY ........................................................................................ 84

4. SECOND ELEMENT – INTENT TO DEFRAUD ................................. 85

5. THIRD ELEMENT – INSTRUMENTALITIES OF INTERSTATE COMMERCE ...................................... 86

6. FOURTH ELEMENT – DOMESTIC TRANSACTION ........................ 87

7. GOOD FAITH ........................................................ 88

C. SECTION 206(2) ....................................................... 89

1. FIRST ELEMENT – UNTRUE STATEMENT ...................................... 90

2. FIRST ELEMENT – MATERIALITY...................................... 91

3. FIRST ELEMENT – UNTRUE STATEMENT – UNANIMITY .................................................... 92

4. SECOND ELEMENT – NEGLIGENCE.................................................... 93

5. THIRD ELEMENT – INSTRUMENTALITIES OF INTERSTATE COMMERCE .................................... 94

6. FOURTH ELEMENT – DOMESTIC TRANSACTION ........................ 95

D. SECTION 206(3) – ELEMENTS ......................................... 96

1. FIRST ELEMENT – PRINCIPAL TRADE OR AGENCY TRADE WITH COMPENSATION OTHER THAN ADVISORY OR MANAGEMENT FEE .................................... 97

2. SECOND ELEMENT – DISCLOSURE OF CAPACITY AND CONSENT .................................................... 98

3. THIRD ELEMENT – INSTRUMENTALITIES OF INTERSTATE COMMERCE .................................... 99

4. FOURTH ELEMENT – DOMESTIC TRANSACTION ...................... 100

E. SECTION 206(4) AND RULE 206(4)-8 – ELEMENTS .................................. 101

1. FIRST ELEMENT – UNTRUE STATEMENT TO INVESTOR IN POOLED INVESTMENT VEHICLE ........................ 103

2. FIRST ELEMENT – MATERIALITY.................................... 104

3. FIRST ELEMENT – UNTRUE STATEMENT – UNANIMITY ................................................. 105

4. SECOND ELEMENT – INTENT TO DEFRAUD ............................... 106

5. THIRD ELEMENT – INSTRUMENTALITIES OF INTERSTATE COMMERCE .................................. 107

6. FOURTH ELEMENT – DOMESTIC TRANSACTION ...................... 108

7. GOOD FAITH ........................................................ 109

F. AIDING AND ABETTING – ELEMENTS.................................... 110

1. AIDING AND ABETTING – PRIMARY VIOLATION ..................... 111

2. AIDING AND ABETTING – ACTUAL KNOWLEDGE.................... 112

  3.  AIDING AND ABETTING – SUBSTANTIAL ASSISTANCE ........... 113

  4.  AIDING AND ABETTING – UNANIMITY ......................................... 114

VII. COMPLIANCE AND RECORD-KEEPING CLAIMS ................................... 115

 A. SECTION 204 – ELEMENTS ................................................................. 115

  1.  FIRST ELEMENT – NOT EXEMPT FROM REGISTERING ............ 116

  2.  SECOND ELEMENT – TRUE, ACCURATE, AND
    CURRENT MEMORANDA ................................................................. 117

 B. SECTION 206(4) AND RULE 206(4)-7 ................................................. 118

  1.  SECTION 206(4) AND RULE 206(4)-7 – ELEMENTS ...................... 119

VIII. SECTION 20(A) CONTROL PERSON CLAIM .......................................... 120

 A. ELEMENTS ............................................................................................ 120

  1.  FIRST ELEMENT – PRIMARY VIOLATION ................................... 122

  2.  SECOND ELEMENT – CONTROL .................................................... 123

  3.  THIRD ELEMENT – CULPABLE PARTICIPANT ............................ 124

  4.  GOOD FAITH ..................................................................................... 125

IX. CIRCUMSTANCES AFFECTING POTENTIAL PENALTIES .................... 126

X. FRAUDULENT TRANSFER – N.Y. DEBTOR & CREDITOR LAW ......... 127

 A. N.Y. DEBTOR AND CREDITOR LAW – SECTION 273 .............. 128

  1.  SECTION 273 – ELEMENTS ............................................................. 128

  2.  THIRD ELEMENT – INSOLVENCY – BURDEN OF PROOF .......... 129

  3.  THIRD ELEMENT – INSOLVENCY – FACTORS ............................ 130

 B. N.Y. DEBTOR AND CREDITOR LAW – SECTION 275 .............. 132

  1.  SECTION 275 – ELEMENTS AND BURDEN OF PROOF ................ 132

  2.  SECTION 275 – FACTORS ................................................................. 133

 C. N.Y. DEBTOR AND CREDITOR LAW – SECTION 276 .............. 134

  1.  SECTION 276 – ELEMENTS AND BURDEN OF PROOF ................ 135

  2.  SECTION 276 – FACTORS ................................................................. 136

XI. FRAUDULENT TRANSFER – 28 U.S.C. § 3304(b) .................................. 137

 A. SECTION 3304(B)(1)(A) – ELEMENTS AND FACTORS ............. 138

 B. SECTION 3304(B)(1)(B) – ELEMENTS AND FACTORS ............. 139

XII. CLOSING COMMENTS ............................................................................ 140

 A. DUTY TO DELIBERATE ................................................................... 140

B.  COMMUNICATION WITH COURT AND JURY DURING JURY'S DELIBERATIONS ............................................................................................ 141

C.  RETURN OF VERDICT ..................................................................................... 142

# I.      INTRODUCTION/GENERAL INSTRUCTIONS

## A.      JUROR ATTENTIVENESS

Ladies and gentlemen, before you begin your deliberations, I now am going to instruct you on the law.  You must pay close attention and I will be as clear as possible.

It has been obvious to me and counsel that until now you have faithfully discharged your duty to listen carefully and observe each witness who testified.  Your interest never flagged, and you have followed the testimony with close attention.

I ask you to give me that same careful attention as I instruct you on the law.

*See* 4 Sand, et al., *Modern Federal Jury Instructions (Civil)*, Instr. 71-1 (2011).

### B.      ROLE OF THE COURT

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or ought to be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

*See* 4 Sand, et al., *Modern Federal Jury Instructions (Civil)*, Instr. 71-2 (2011).

### C.     ROLE OF THE JURY

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors.  In order for you to determine the facts, you must rely upon your own recollection of the evidence.  Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the plaintiff has proven its case.  You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to perform the duty of finding the facts without bias or prejudice to any party.

*See* 4 Sand, et al., *Modern Federal Jury Instructions (Civil)*, Instr. 71-3 (2011).

**D.      COMMON COUNSEL**

Although the ICP, ICPS, ICP Holdco, and Tom Priore are being represented by the same counsel, you are not to treat them as one person.  Each defendant is entitled to your separate consideration.  The question of whether liability has been proven is personal to each defendant and must be decided by you as to each defendant individually.

*See* 4 Sand, et al., *Modern Federal Jury Instructions (Civil)*, Instr. 71-8 (2011).

## E.     BURDEN OF PROOF

This is a civil case and as such the plaintiff has the burden of proving each element of its claims by a preponderance of the evidence.

If, after considering all of the testimony you are satisfied that the plaintiff has carried its burden on each element of its claims, then you must find for the plaintiff on its claims.  If after such consideration you find the testimony of both parties to be in balance or equally probable, then the plaintiff has failed to sustain its burden and you must find for the defendant.

You should base your decision on all of the evidence, regardless of which party presented it.

*See* 4 Sand, et al., *Modern Federal Jury Instructions (Civil)*, Instr. 73-1 (2011).

## F.        PREPONDERANCE OF THE EVIDENCE

Plaintiff has the burden in a civil action, such as this, to prove every element of its claims by a preponderance of the evidence.  If you conclude that the Plaintiff has failed to establish its claim by a preponderance of the evidence, you must decide against it on the issue you are considering.

What does a "preponderance of evidence" mean?  To establish a fact by a preponderance of evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have introduced them, as well as all stipulations of fact to which the parties have agreed.

If you find that the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the Plaintiff.  That is because the Plaintiff must prove more than simple equality of evidence—it must prove the element at issue by a preponderance of the evidence.

*See* 4 Sand, et al., *Modern Federal Jury Instructions (Civil)*, Instr. 73-2 (2011); 3 O'Malley, et al., *Federal Jury Practice and Instructions* § 104.01 (6th ed. 2011).

### G.    WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1)   The sworn testimony of any witness;

2)   The exhibits which are received into evidence; and

3)   Any facts to which all the lawyers have agreed or stipulated.

*See Ninth Circuit Manual of Model Jury Instructions* (*Civil)*, 2007 Edition, Section 1.6.

H.   **WHAT IS NOT EVIDENCE**

Certain things are not evidence and you may not consider them in deciding what the facts are.  I will list them for you:

1)   Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

2)   Objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection, or the court's ruling on it.

3)   Questions by lawyers, standing alone, are not evidence.  However, when a witness answers a question, the content of the witness's answer often cannot be understood without reference to the question.  In this situation, you may properly consider the question to give content and meaning to the answer.

4)   Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, some testimony and exhibits have been admitted only for a limited purpose; where I have given a limiting instruction, you must follow it.

5)   Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide this case solely on the evidence received at trial.

*See Ninth Circuit Manual of Model Jury Instructions (Civil)*, 2007 Edition, Section 1.7.

## I.        "DIRECT" AND "CIRCUMSTANTIAL" EVIDENCE DEFINED

Generally speaking, there are two types of evidence that are generally presented during a trial—direct evidence and circumstantial evidence.  "Direct evidence" is the kind of testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. "Indirect" or "circumstantial" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

As a general rule, the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.  Nor is a greater degree of certainty required of circumstantial evidence.  You are simply required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

*See* 3 O'Malley, et al., *Federal Jury Practice and Instructions* § 104.05 (6th ed. 2011).

**J.      CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

*See Ninth Circuit Manual of Model Jury Instructions (Civil)*, 2007 Edition, Section 2.12.

**K.      CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

In other words, the charts or summaries are used only as a matter of convenience.  To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.


*See* 3 O'Malley, et al., *Federal Jury Practice and Instructions* § 104.50 (6th ed. 2011).

**L.      STIPULATION OF FACTS**

A stipulation of facts is an agreement among the parties that a certain fact is true.  You must regard such agreed facts as true.

*See* 4 Sand, et al., *Modern Federal Jury Instructions (Civil)*, Instr. 74-4 (2011).

## M.    WITNESS CREDIBILITY

You are the sole judges of the credibility of witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness's intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness's ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters.  Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

*See* 3 O'Malley, et al., *Federal Jury Practice and Instructions* § 105.01 (6th ed. 2011).

**N.      CAUTION AS TO COOPERATING WITNESS**

You have heard the testimony of Aamer Abdullah.  You have heard that he previously met with the SEC to discuss the same matters about which he testified here.  And you also have heard that he did so under an agreement with the SEC and with the hope that the SEC would show him leniency in exchange for his cooperation.

The testimony of a witness who provides evidence against someone else to escape punishment for his own misdeeds, or for other personal reason or advantage, must be examined and weighed by the jury with greater care than the testimony of a witness who is not so motivated.  You must determine whether the testimony of this witness has been affected by self-interest or by his desire for leniency from the SEC.

*See* O'Malley, et al., *Federal Jury Practice & Instructions* (Criminal) § 15.02 (6th ed. 2008).

### O.    EXPERT WITNESSES - GENERALLY

In this case, I have permitted the following witnesses to express their opinions about matters that are in issue:

[*List of experts who testified to be provided at the close of evidence.*]

A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience or training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment and common sense.  The determination of the facts in this case rests solely with you.

*See* 4 Sand, et al., *Modern Federal Jury Instructions (Civil)*, Instr. 76-9 (2011).

**P.       EVIDENCE OF DEFENDANT'S COMPENSATION AND WEALTH**

You have heard evidence about the compensation and wealth of Mr. Priore.  This evidence and your opinion of other people's wealth must not enter your judgment of whether or not any of the defendants is liable in this case.  You can consider this evidence only to the extent that it may relate to the parties' claims and defenses.


*See United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006); *United States v. Cassese*, 290 F. Supp. 2d 443, 457 (S.D.N.Y. 2003), *aff'd*, 428 F.3d 92 (2d Cir. 2005).

Q.    MULTIPLE DEFENDANTS

Although there is more than one defendant in this case, it does not follow from that fact that if you find that one defendant is liable or not liable, your verdict as to the other defendants should be the same.  Each defendant is entitled to a fair consideration of the evidence.  No defendant is to be prejudiced should you find against another defendant.   Unless otherwise stated, all instructions I give you govern the case as to each defendant.

*See* 3 O'Malley, et al., *Federal Jury Practice and Instructions* § 103.14 (6th ed. 2011).

**R.    SEPARATE CLAIMS**

The plaintiff's Complaint contains fourteen separate claims.  You must not draw any inference from the number of claims included in the Complaint.  Each claim alleges a separate violation, and you must consider each claim separately as to each defendant.  Your determination on one particular claim should not affect your decision on any other claim.

*See* Sand, et al., *Modern Federal Jury Instructions (Criminal)*, Instr. No. 3-6 (2011).

### S.      ALL PARTIES EQUAL BEFORE THE LAW

The fact that a government agency, here, the SEC, is the plaintiff in this case must not affect your decision in any way and entitles the plaintiff to no greater consideration than that accorded to an individual or any other defendant.  A government agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice.  Further, you should not give any weight whatsoever to the SEC's decision to file this lawsuit.

*See* 11th Cir. Pattern Jury Instr. § 2.3 (2005); Charge to the Jury in *United States v. Bergonzi*, No. 00-0505 (N.D. Cal. Oct. 27, 2006), *available at* 2006 WL 5347401; Charge to the Jury in *SEC v. Koenig*, Civ. No. 02-2180 (N.D. Ill. June 29, 2006), *available at* 2006 WL 2127852.

### T.     EVIDENCE FOR LIMITED PURPOSES

When I instructed you that an item of evidence was admitted for a limited purpose, you must consider that item only for that limited purpose and for no other.  Similarly, when I instructed you that an item of evidence was admitted against only certain defendants, you may consider such evidence only against those defendants and may not in any respect consider such evidence in your deliberations on any other defendant.

*See* 3 O'Malley, et al., *Federal Jury Practice and Instructions* § 101.45 (2000); Sand, et al., *Modern Federal Jury Instructions (Criminal)*, Instr. No. 3-5 (2011).

U.      **PRESUMPTION OF REGULARITY**

Unless and until outweighed by evidence to the contrary, you may find that official duty has been regularly performed, that private transactions have been fair and regular, that the ordinary course of business or employment has been followed, that things have happened according to the ordinary course of nature and the ordinary habits of life, and that the law has been obeyed.

*See* 3 O'Malley, et al., *Federal Jury Practice and Instructions* § 104.21 (6th ed. 2011).

**II.      SECURITIES FRAUD CLAIMS GENERALLY**

**A.      INTRODUCTORY INSTRUCTION ON THE FEDERAL SECURITIES LAWS**

The plaintiff in this case, the United States Securities and Exchange Commission or "SEC," is an agency created by Congress.  Congress has authorized the SEC to serve as plaintiff in lawsuits alleging violations of the laws governing securities that are bought and sold in the public marketplace.

A "security" is any note, stock, treasury stock, security future, bond, debenture, certificate of interest or participation in any profit-sharing agreement . . . , investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security . . . or in general, any instrument commonly known as a 'security.'"

I will now describe to you those relevant sections of the securities laws.

*See* 15 U.S.C. § 78c(a)(10) (2006); *Ninth Circuit Manual of Model Jury Instructions (Civil)*, 2007 Edition, Section 18.0.

## B.    NO STRICT LIABILITY

You have heard testimony that Mr. Priore was an owner and executive of ICP Holdco, ICP, and ICPS.  I instruct you that you may not vote to hold Mr. Priore liable solely based on the position he held at ICP Holdco, ICP, or ICPS.  A defendant who is an officer, director, or employee of a corporation is not legally responsible for allegedly false statements merely because the defendant held a senior position at the corporation.  The law requires more.  As I will explain in further detail, the plaintiff must prove each element of the count you are considering with respect to each defendant you are considering by a preponderance of the evidence.

*See* 3 O'Malley, et al., *Federal Jury Practice and Instructions* § 103.14 (6th ed. 2011); *Janus Capital Grp. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011); *United States v. Finnerty,* 533 F.3d 143, 148 (2d Cir. 2008).

III.    **SECTION 17(A) OF THE SECURITIES ACT**

A.      **SECTION 17(A) GENERALLY**

In Claim 1, the plaintiff alleges that ICP, ICPS, ICP Holdco, and Tom Priore committed

fraud in violation of Section 17(a) of the Securities Act of 1933.  Section 17(a) is divided into

three subsections, 17(a)(1), 17(a)(2), and 17(a)(3).  These subsections state as follows:

It shall be unlawful for any person in the offer or sale of any securities by the use of any

means or instruments of transportation or communication in interstate commerce or by the use of

the mails, directly or indirectly:

1)  to employ any device, scheme, or artifice to defraud, or

2)  to obtain money or property by means of any untrue statement of a material fact
    or any omission to state a material fact necessary in order to make the statements
    made, in light of the circumstances under which they were made, not misleading;
    or

3)  to engage in any transaction, practice, or course of business which operates or
    would operate as a fraud or deceit upon the purchaser.

*See* 15 U.S.C. § 77q(a) (2006).

## B.     ELEMENTS OF SECTION 17(A)(1)

To prove its Section 17(a)(1) claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence as to the defendant you are considering:

First, that the defendant made an untrue statement of a material fact or omitted to state a material fact necessary under the circumstances to keep the statements that were made from being misleading;

Second, that the defendant's conduct was in connection with the sale of a security;

Third, that such a sale of a security was a domestic transaction;

Fourth, that the defendant acted with intent to defraud; and

Fifth, that the defendant used or caused to be used, means and instrumentalities of interstate commerce, such as mail or telephone, in the sale of the securities.

*See* 15 U.S.C. § 77q(a); Sand, et al., *Modern Federal Jury Instructions (Civil)*, Instr. 82-3 (2011); *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010); *Aaron v. SEC*, 446 U.S. 680, 701 (1980); *SEC v. Kelly*, No. 08 Civ. 4612 (CM), __ F. Supp. 2d __, 2011 WL 4431161, at *3-4 (S.D.N.Y. Sept. 22, 2011); *SEC v. Goldman Sachs & Co.*, 790 F. Supp. 2d 147 (S.D.N.Y. 2011); *SEC v. Norton*, 21 F. Supp. 2d 361, 365 (S.D.N.Y. 1998).

1.     **FIRST ELEMENT – UNTRUE STATEMENT**

An untrue statement is a statement of material fact that is false when it is made.  In determining whether or not a statement concerning a given material fact was true and accurate, the truth and accuracy must be evaluated on the basis of the circumstances that existed at the time the statement was made.  A statement regarding a material fact may not be held false merely because subsequent events prove it to be false.  A defendant is not required to use a particular set of words to express a material fact.

The Plaintiff must also prove by a preponderance of the evidence that the defendant you are considering actually made the alleged false statement.  Merely taking part in the decision to make a statement or even being intricately involved in making the statement is not sufficient.  Nor is it sufficient for the Plaintiff to prove that the defendant you are considering approved the making of a false or misleading statement by another, even if the defendant had knowledge that the statement was false or misleading.  Instead, the Plaintiff must prove by a preponderance of the evidence that the defendant you are considering had ultimate authority over the statement, including its content and whether and how to communicate it.

*See* 3 O'Malley, et al., *Federal Jury Practice and Instructions* § 162.235 (5th ed. 2001); *Janus Capital Grp. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) ("[A] defendant must actually make a false or misleading statement in order to be held [primarily] liable under Section 10(b).  Anything short of such conduct is merely aiding and abetting . . . ."); *Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 584 F.2d 1195, 1200 (2d Cir. 1978) ("There is no requirement that a material fact be expressed in certain words or in a certain form of language.") (quotation marks omitted); *SEC v. Kelly*, No. 08 Civ. 4612 (CM), __ F. Supp. 2d __, 2011 WL 4431161, at *3-4 (S.D.N.Y. Sept. 22, 2011); *SRM Global Fund L.P. v. Countrywide Fin. Corp.*, No. 09 Civ. 5064 (RMB), 2010 WL 2473595 (S.D.N.Y. June 17, 2010); *SEC v. May,* 648 F. Supp. 2d 70, 77-78 (D.D.C. 2009); *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 374-75 (S.D.N.Y. 2006); *SEC v. Pimco Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 466 (S.D.N.Y. 2004) ("[A] defendant must actually make a false or

misleading statement in order to be held [primarily] liable . . . .") (second alteration in original) (quotation marks omitted); *Klamberg v. Roth*, 473 F. Supp. 544, 551-52 (S.D.N.Y. 1979).

## 2.    FIRST ELEMENT – MATERIALITY

The plaintiff must prove by a preponderance of the evidence that the alleged misrepresentation, if there was one, of the defendant you are considering was material at the time the statement was made.  This element requires a showing of a substantial likelihood that the misrepresented fact would have assumed actual significance in the deliberations of the reasonable investor.

A misrepresentation is "material" only if a reasonable investor would have considered it significant in making investment decisions.  Put another way, the plaintiff must prove that a reasonable investor would have viewed the misstated information as having significantly altered the total mix of information made available.  A statement made after the time of the investment cannot be material to that investment.  Further, in determining whether a statement was material, you may assume that reasonable investors in the Triaxx CDOs, SCIF, and Seychelles have a sophisticated understanding of the business world.

You must decide whether something was material based on the circumstances as they existed at the time of the statement.  Materiality cannot be judged by hindsight.  You may not consider events occurring after the making of the statement in determining whether the alleged statement was material.

Further, in deciding whether something was material, you may consider information already in the public domain as well as facts known or reasonably available to the investors.

See O'Malley et al., *Federal Jury Practice and Instructions* § 162.232 (5th ed.2001); ABA, *Model Jury Instructions: Securities Litigation* § 2.03[2][a] (1996) ("A finding of materiality must be based on the facts existing when the statement was made.  Materiality cannot be judged by hindsight.  You may not consider events occurring after the statement or omission in determining whether the statement or omission was material when it was made.  A statement or

omission made after the time of the investment cannot be material to that investment."); *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 2010 Edition, § 18.2; *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (A material fact "would have been viewed by the reasonable investor has having significantly altered the 'total mix' of information made available.") (quotation marks omitted); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 165 (2d Cir. 2000) ("Materiality is determined in light of the circumstances existing at the time the alleged misstatement occurred."); *Delta Holdings, Inc. v. Nat'l Distillers & Chem. Corp.*, 945 F.2d 1226, 1242-44 (2d Cir. 1991); *SEC v. Treadway*, 430 F. Supp. 2d 293, 329 (S.D.N.Y. 2006); DEF0310 (Triaxx 1 Offering Memorandum), at 212; DEF0472 (Triaxx 2 Offering Memorandum), at 217; DEF0473 (Triaxx 3 Offering Memorandum), at 227; DEF0476 (Triaxx Funding Offering Memorandum), at 25, 211; DEF0488 (SCIF Offshore Offering Memorandum), at ii.

### 3.    FIRST ELEMENT – UNTRUE STATEMENT – UNANIMITY

In order to find that a defendant made an untrue statement of a material fact, all of you must agree that the same statement was false.  It is not enough if some of you find that one statement was false while others of you find a different statement was false.

*See* Fed. R. Civ. P. 48(b) ("Unless the parties stipulate otherwise, the verdict must be unanimous . . . ."); *United States v. Natelli*, 527 F.2d 311, 325 (2d Cir. 1975); *United States v. Payseno*, 782 F.2d 832, 835-36 (9th Cir. 1986); *United States v. Gipson,* 553 F.2d 453, 458-59 (5th Cir.1977).

### 4.   SECOND ELEMENT – CONDUCT "IN CONNECTION WITH" THE SALE OF A SECURITY

The next element the Plaintiff is required to prove by a preponderance of the evidence is that the material misrepresentation, if any, was in connection with the sale of a security. To satisfy this requirement, the Plaintiff must prove by a preponderance of the evidence that there was some nexus or relationship between the alleged material misrepresentation and the sale of the security. The securities at issue in this case are RMBS that were traded among and between ICP and/or its clients (*i.e.*, the Triaxx CDOs, SCIF, and Seychelles). Thus, the Plaintiff must prove by a preponderance of the evidence that the alleged material misrepresentation was made in connection with such RMBS transactions. It is not sufficient for Plaintiff to prove a material misrepresentation to CDO investors because the SEC's claims are not based upon the sale of notes in the CDO itself.

Further, evidence that defendants made untrue statements of material fact following the sale of a security is inadequate. A "sale" involves the transfer of ownership of an asset. Simply continuing to hold a security does not qualify. Finally, the alleged misrepresentation must pertain to the fundamental nature of the security, namely, characteristics and attributes that would induce an investor to buy or sell the particular securities.

*See* 15 U.S.C. § 77b(a)(3); Sand, et al., *Modern Federal Jury Instructions*, Instr. 82-4 (2011); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756–59 (1975) (Powell, J., concurring); *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990); *First Equity Corp. v. Standard & Poor's Corp.*, 869 F.2d 175, 180 n.2 (2d Cir. 1989) (10b-5 plaintiffs "may recover only for losses that result from decisions to buy or sell, not from decisions to hold or refrain from trading"); *Kelter v. Apex Equity Options Fund, LP*, No. 08 Civ. 2911(NRB), 2009 WL 2599607, at *9 (S.D.N.Y. Aug. 24, 2009) ("'[T]he requirement of fraud in connection with the purchase or sale of a security is not satisfied by an allegation that the plaintiff[] w[as] induced fraudulently not to sell [his] securities.'" (first alteration added) (quoting *Abrahamson v. Fleschner*, 568 F.2d 862, 868 (2d Cir. 1977)); *Chien v. Skystar Bio Pharm. Co.*, 566 F. Supp. 2d 108, 118 n.9 (D.

Conn. 2008) (alleged misstatements made following plaintiff's purchase could not have induced him to make the purchase in the first place); *Fezzani v. Bear, Stearns & Co., Inc.*, 384 F. Supp. 2d 618, 639 (S.D.N.Y. 2004); *SEC v. Norton*, 21 F. Supp. 2d 361, 365 (S.D.N.Y. 1998) ("The alleged misrepresentation must pertain to the 'fundamental nature' of the security, "'namely, characteristics and attributes that would induce an investor to buy or sell the particular [securities].'"") (quoting *Prod. Res. Grp., L.L.C. v. Stonebridge Partners Equity Fund, L.P.*, 6 F. Supp. 2d 236, 239 (S.D.N.Y. 1998)) (alteration in original); SEC Opp. to ICP Defs.' Partial Motion to Dismiss, at 4-5.

## 5.    THIRD ELEMENT – DOMESTIC TRANSACTION

Next, Plaintiff is required to prove by a preponderance of the evidence that such a sale of a security constituted a domestic transaction.  The securities laws, including all of the statutes at issue in this case, apply only to domestic transactions.  Private transactions conducted between foreign entities that do not involve a security traded on a domestic stock exchange do not constitute domestic transactions, even if a material portion of the transaction or the alleged fraud took place in the United States.  None of the residential mortgage-backed securities at issue here, the Triaxx CDOs, SCIF, or Seychelles traded on a domestic stock exchange.  It is not sufficient for the Plaintiff to prove that the contract to purchase or sell securities was made in the United States, that any defendant acted as an agent, broker, or asset manager in committing foreign entities to purchase or sell securities, or that the clearing, settlement, and delivery of securities was facilitated through U.S. banks.

*See* 15 U.S.C. § 77q(a); *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010); *SEC v. Goldman Sachs & Co.*, 790 F. Supp. 2d 147 (S.D.N.Y. 2011); *Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*, 798 F. Supp. 2d 533 (S.D.N.Y. 2011); *Cascade Fund, LLP v. Absolute Capital Mgmt. Holdings Ltd.*, No. 08-cv-01381-MSK-CBS, 2011 WL 1211511, at *7 (D. Colo. Mar. 31, 2011); *Absolute Activist Value Master Fund Ltd. v. Homm*, No. 09-CV-08862(GBD), 2010 WL 5415885, at *5 (S.D.N.Y. Dec. 22, 2010); *Elliott Assocs. v. Porsche Automobil Holding SE*, 759 F. Supp. 2d 469, 471, 475 (S.D.N.Y. 2010); *Plumbers' Union Local No. 12 Pension Fund v. Swiss Reins. Co.*, 753 F. Supp. 2d 166, 178–79 (S.D.N.Y. 2010).

### 6.    FOURTH ELEMENT – INTENT TO DEFRAUD

The next element the plaintiff is required to prove by a preponderance of the evidence is that the defendant you are considering acted with intent to defraud.  In the context of the securities laws, intent to defraud means to act knowingly and with intent to deceive.  Knowingly means to act intentionally and deliberately, rather than mistakenly or inadvertently.  In other words, knowingly means that the defendant had actual knowledge of the false nature of the misrepresentations.

If the SEC cannot prove actual knowledge, then the SEC must prove that the defendant acted with severe recklessness.  Severe recklessness involves conduct which is highly unreasonable and which represents an extreme departure from standards of ordinary care, and that present a danger of misleading buyers that was either known to the defendant or so obvious that the defendant must have been aware of it.  It is not enough for the SEC to show that the defendant acted accidentally, mistakenly, or negligently.  Thus, the SEC cannot prove recklessness merely by showing mismanagement.

The question of whether a person acted with intent to defraud is a question of fact for you to determine, like any other fact question. It is a question involving one's state of mind.

See Sand, et al., *Modern Federal Jury Instructions (Civil)* § 82-8 (2011); O'Malley et al., *Federal Jury Practice and Instructions* § 162.232 (5th ed. 2001); *Aaron v. SEC*, 446 U.S. 680, 691-92 (1980); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 199-200 (1976); *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 194 (2d Cir. 2008); *Novak v. Kasaks,* 216 F.3d 300, 312 (2d Cir. 2000) (scienter requirement can be satisfied by pleading either "conscious recklessness," *i.e.*, a state of mind approximating actual intent, and not merely heightened form of negligence, or actual intent); *Rothman v. Gregor,* 220 F.3d 81 (2d Cir. 2000); *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269-70 (2d Cir. 1996); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 n.2 (5th Cir. 1996); *Acito v. IMCERA Grp.*, 47 F.3d 47 (2d Cir. 1995);

*Platsis v. E.F. Hutton & Co.*, 946 F.2d 38, 40 (6th Cir. 1991); *Camp v. Dema*, 948 F.2d 455, 460-61 (8th Cir. 1991); *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 374-75 (S.D.N.Y. 2006); *Ryan v. Hunton & Williams,* No. 99 CV 5938 (JG), 2000 WL 1375265, at *8 (E.D.N.Y. Sept. 20, 2000); *SEC v. Feminella*, 947 F. Supp. 722, 729-30 (S.D.N.Y. 1996).

7.    **FIFTH ELEMENT – INSTRUMENTALITIES OF INTERSTATE COMMERCE**

An instrumentality of interstate commerce includes the postal mails, e-mails, telephone, Internet and similar methods of communication and travel from one state to another within the United States.

*See Manual of Model Civil Jury Instructions for the Ninth Circuit*, 2010 Edition, § 18.0.

### 8.     GOOD FAITH

Good faith is an absolute defense to Plaintiff's 17(a)(1) claim.  Even false statements of material facts do not amount to fraud unless they are made with fraudulent intent.  One who expresses an opinion honestly or states a fact honestly believed to be true is not chargeable with fraudulent intent, even though his opinion is erroneous or his belief is mistaken.  In other words, an honest belief in the truth of the representations made by a defendant is a complete defense, however inaccurate the statements may turn out to be.  If the defendant you are considering believed in good faith that he or it was acting properly, even if he or it was mistaken in that belief, and even if others were injured by the conduct, there would be no violation.

The burden of establishing lack of good faith and fraudulent intent rests upon the plaintiff.  A defendant has no burden to establish a defense of good faith.  Rather, it is plaintiff's burden to prove fraudulent intent by a preponderance of the evidence as to each defendant, *i.e.*, that the defendant you are considering did not act in good faith.

You are to consider a defendant's good faith subjectively, from the perspective of the individual defendant.  It is possible for a defendant to disregard a danger that would be obvious to the ordinary or reasonable person and still act in good faith.  In such instances, the defendant's subjective good faith is inconsistent with the intent to defraud, and therefore precludes a finding of liability for securities fraud.

In evaluating good faith, you should take into account all the facts and circumstances of this case.  It is not a defendant's burden to disprove intent to defraud.  It is plaintiff's burden to prove intent to defraud by a preponderance of the evidence.

*See* Sand, *Modern Federal Jury Instructions (Civil)* § 82-8 (2011) ("Since an essential element of plaintiff's case is intent to defraud or recklessness, it follows that good faith on the part of the defendant is a complete defense to a charge of securities fraud.  A defendant, however, has no burden to establish a defense of good faith.  The burden is on the plaintiff to prove fraudulent intent and a consequent lack of good faith by a preponderance of the evidence."); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206 (1976); *Howard v. SEC*, 376 F.3d 1136, 1146-49 (D.C. Cir. 2004); *United States v. Sayakhom*, 186 F.3d 928, 940 (9th Cir. 1999).

## C.    ELEMENTS OF SECTIONS 17(A)(2) AND (3)

If you find that any defendant did not violate Section 17(a)(1) because the SEC did not prove by a preponderance of the evidence that the defendant acted with intent to defraud, you must still consider whether that defendant violated Section 17(a)(2) or 17(a)(3).

To prove its Section 17(a)(2) and (3) claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence as to the defendant you are considering:

First, that the defendant made an untrue statement of a material fact or omitted to state a material fact necessary under the circumstances to keep the statements that were made from being misleading;

Second, that the defendant obtained money or property by means of such an untrue statement of material fact or omission, if you find that there was one;

Third, that the defendant's conduct was in connection with the sale of a security;

Fourth, that such a sale of a security was a domestic transaction;

Fifth, that the defendant acted with negligence; and

Sixth, that the defendant used or caused to be used, means and instrumentalities of interstate commerce, such as mail or telephone, in the sale of securities.

*See* 15 U.S.C. § 77q(a); *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010); *Aaron v. SEC*, 446 U.S. 680, 691 (1980); *SEC v. Daifotis*, No. C 11-00137 WHA, 2011 WL 2183314, at *10 (N.D. Cal. June 6, 2011) (holding that "the plain meaning of [the text of § 17(a)(2)] requires that the *defendant* himself be alleged to have obtained money or property," and dismissing complaint against individual when SEC merely alleged that his employer company "receive[d] money or property as a result of the violation"); *SEC v. Treadway*, 430 F. Supp. 2d 293, 340 (S.D.N.Y. 2006); *SEC v. Norton*, 21 F. Supp. 2d 361, 365 (S.D.N.Y. 1998); *SEC v. Glantz*, No. 94 Civ. 5737 (CSH), 1995 WL 562180, at *5 (S.D.N.Y. Sept. 20, 1995) (under § 17(a)(2),

"plaintiff must allege that defendant actually obtained money or property by means of the untrue statements"); *SEC v. Burns*, No. 84-0454, 1986 WL 36318, at *4 (S.D. Cal. Feb. 19, 1986) ("There is no evidence before this Court that Mr. Burns personally acquired money or property, hence the Court finds no violation of Section 17(a)(2).").

### 1.   FIRST ELEMENT – UNTRUE STATEMENT

In determining whether Plaintiff has proven by a preponderance of the evidence that the defendant you are considering made an untrue statement of a material fact, you should apply Instruction III.B.1 on page 27 above.

## 2.  FIRST ELEMENT – MATERIALITY

In determining whether Plaintiff has proven by a preponderance of the evidence that the alleged misstatement was material, you should apply Instruction III.B.2 on page 29 above.

### 3.      FIRST ELEMENT – UNTRUE STATEMENT – UNANIMITY

In order to find that a defendant made an untrue statement of a material fact, all of you must agree that the same statement was false.  You should apply Instruction III.B.3 on page 31 above.

### 4.    SECOND ELEMENT – OBTAIN MONEY OR PROPERTY

Next, the Plaintiff must prove by a preponderance of the evidence that the

defendant you are considering obtained money or property by means of such an untrue statement

of material fact, if you find that there was one.  In other words, the Plaintiff must prove that the

defendant himself (or itself) obtained money or property as a result of the alleged violation.  It is

not sufficient for the SEC to prove that the defendant's employer obtained money or property by

means of such a violation, or that another entity obtained money or property by means of such a

violation.

*See*  15 U.S.C. § 77q(a); *SEC v. Daifotis*, No. C 11-00137 WHA, 2011 WL 2183314, at *10
(N.D. Cal. June 6, 2011) (holding that "the plain meaning of [the text of § 17(a)(2)] requires that
the *defendant* himself be alleged to have obtained money or property," and dismissing complaint
against individual when SEC merely alleged that his employer company "receive[d] money or
property as a result of the violation"); *SEC v. Norton*, 21 F. Supp. 2d 361, 365 (S.D.N.Y. 1998);
*SEC v. Glantz*, No. 94 Civ. 5737 (CSH), 1995 WL 562180, at *5 (S.D.N.Y. Sept. 20, 1995)
(under § 17(a)(2), "plaintiff must allege that defendant actually obtained money or property by
means of the untrue statements"); *SEC v. Burns*, No. 84-0454, 1986 WL 36318, at *4 (S.D. Cal.
Feb. 19, 1986) ("There is no evidence before this Court that Mr. Burns personally acquired
money or property, hence the Court finds no violation of Section 17(a)(2).").

**5.    THIRD ELEMENT – CONDUCT "IN CONNECTION WITH" THE SALE OF A SECURITY.**

In determining whether or not Plaintiff has proven by a preponderance of the evidence that the material misrepresentation, if any, was in connection with the sale of a security, you should apply Instruction III.B.4 on page 32 above.

### 6.     FOURTH ELEMENT –  DOMESTIC TRANSACTION

In determining whether or not Plaintiff has proven by a preponderance of the evidence

that such a sale of a security constituted a domestic transaction, you should apply Instruction

III.B.5 on page 34 above.

### 7.    FIFTH ELEMENT – NEGLIGENCE

Next, the Plaintiff must prove by a preponderance of the evidence that the Defendant you are considering acted with negligence.  "Negligence" is the doing of some act a reasonably prudent person would not do, or the failure to do something a reasonably prudent person would do, when prompted by considerations that ordinarily regulate the conduct of human affairs.  In other words, it is the failure to use ordinary care under the circumstances in the management of one's person or property, or of agencies under one's control.  Ordinary care is not an absolute term, but a relative one. In deciding whether or not ordinary care was exercised in a given case, the conduct in question must be viewed in the light of all the surrounding circumstances as shown by the evidence in the case.

In determining whether or not the defendant acted negligently you may consider whether the defendant adhered to an industry practice or custom.

A corporate executive is entitled to delegate duties to his colleagues and/or employees. A delegation of duties is not negligent so long as the executive exercised ordinary care and prudence to supervise the colleagues to whom he delegated authority.

See 3 O'Malley, et al., *Federal Jury Practice and Instructions* §§ 120.02, 120.11 (6th ed. 2011); *Fras v. Creative Playthings, Inc.*, 151 F. App'x 10, 11 (2d Cir. 2005); *Lansing Automakers' Fed. Credit Union v. MCG Portfolio Mgmt. Corp.,* No. 5:89-CV-52, 1991 WL 238974, at *2 (W.D. Mich. Sept. 12, 1991); William E. Knepper and Dan A. Bailey, *Liability of Corporate Officers and Directors* § 3.11 (8th ed. 2011).

## 8.    SIXTH ELEMENT –  INSTRUMENTALITIES OF INTERSTATE COMMERCE

In determining whether or not Plaintiff has proven by a preponderance of the evidence that the defendant you are considering used or caused to be used means and instrumentalities of interstate commerce in the sale of securities, you should apply Instruction III.B.7 on page 37 above.

## IV.   SECTION 10(B) OF THE SECURITIES EXCHANGE ACT AND SEC RULE 10B-5

### A.   PRIMARY VIOLATION

#### 1.   ELEMENTS OF SECTION 10(B)

In Claim 2, the Plaintiff alleges that ICP, ICPS, ICP Holdco, and Tom Priore committed fraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5, and that they aided and abetted the other Defendants' primary violation.  From now on, I will use "Section 10(b)" to refer to both the Section and the Rule.  I will discuss Plaintiff's aiding and abetting claims later, and now will address the elements that must be proven to establish Plaintiff's primary liability claim under Section 10(b).

To prove its Section 10(b) claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence as to the defendant you are considering:

First, that in connection with the purchase or sale of a security, the defendant made an untrue statement of a material fact or omitted to state a material fact necessary under the circumstances to keep the statements that were made from being misleading;

Second, that such purchase or sale of a security was a domestic transaction;

Third, that the defendant acted with intent to defraud; and

Fourth, the defendant used or caused to be used, means and instrumentalities of interstate commerce, such as mail or telephone.

*See* Sand, et al., *Modern Federal Jury Instructions (Civil)*, Instr. 82-3 (2011); *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010).

### a. FIRST ELEMENT – UNTRUE STATEMENT

In determining whether Plaintiff has proven by a preponderance of the evidence that the defendant you are considering made an untrue statement of a material fact, you should apply Instruction III.B.1 on page 27 above.

**b.**     **FIRST ELEMENT – MATERIALITY**

In determining whether Plaintiff has proven by a preponderance of the evidence

that the alleged misstatement was material, you should apply Instruction III.B.2 on page 29

above.

           **c.**       **FIRST ELEMENT – UNTRUE STATEMENT – UNANIMITY**

In order to find that a defendant made an untrue statement of a material fact, all of you must agree that the same statement was false.  You should apply Instruction III.B.3 on page 31 above.

### d.   FIRST ELEMENT – "IN CONNECTION WITH" THE PURCHASE OR SALE OF A SECURITY

To establish a violation of Section 10(b), the plaintiff must prove by a preponderance of the evidence that the alleged material misrepresentation, if there was one, was in connection with the purchase or sale of a security.

First, there must be a purchase or sale of a security.  This means that the transfer of ownership of an asset is required for a purchase and sale.  Simply continuing to hold a security does not qualify.

Second, to satisfy the "in connection with" requirement, the plaintiff must prove by a preponderance of the evidence that there was some nexus or relationship between the alleged untrue statements of material fact and the purchase or sale of the security.  The securities at issue in this case are RMBS that were traded among and between ICP and/or its clients (*i.e.*, the Triaxx CDOs, SCIF, and Seychelles).  Thus, the Plaintiff must prove by a preponderance of the evidence that the alleged material misrepresentation was made in connection with such RMBS transactions.  It is not sufficient for Plaintiff to prove a material misrepresentation to CDO investors because the SEC has not made any claims based upon the purchase or sale of notes in the CDO itself.

Moreover, the misrepresentations must have some direct pertinence to a securities transaction.  Evidence that defendants made untrue statements of material fact following the purchase or sale of a security is inadequate.  Likewise, evidence that a security was purchased or sold in spite of defendants' alleged untrue statement of material fact is insufficient.  Finally, the

alleged misrepresentation must pertain to the fundamental nature of the security, namely,

characteristics and attributes that would induce an investor to buy or sell the particular securities.

*See* Sand, et al., *Modern Federal Jury Instructions (Civil)*, Instr. 82-4 (2011); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756–58 (1975) (Powell, J., concurring); *First Equity Corp. v. Standard & Poor's Corp.*, 869 F.2d 175, 180 n.2 (2d Cir. 1989) (10b-5 plaintiffs "may recover only for losses that result from decisions to buy or sell, not from decisions to hold or refrain from trading"); *Kelter v. Apex Equity Options Fund, LP*, No. 08 Civ. 2911 (NRB) (S.D.N.Y. Aug. 24, 2009) ("[I]t is clear in this Circuit that 'the requirement of fraud in connection with the purchase or sale of a security is not satisfied by an allegation that plaintiff[] w[as] induced fraudulently not to sell [his] securities.") (first alteration added) (quoting *Abrahamson v. Fleschner*, 568 F.2d 862, 868 (2d Cir. 1977)); *Chien v. Skystar Bio Pharm. Co.*, 566 F. Supp. 2d 108, 118 n.9 (D. Conn. 2008) (alleged misstatements made following plaintiff's purchase could not have induced him to make the purchase in the first place), aff'd, 378 F. App'x 109 (2d Cir. 2010); *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 639 (S.D.N.Y. 2004); *SEC v. Norton*, 21 F. Supp. 2d 361, 365 (S.D.N.Y. 1998) ("The alleged misrepresentation must pertain to the 'fundamental nature' of the security, '"namely, characteristics and attributes that would induce an investor to buy or sell the particular [securities]."'") (quoting *Prod. Res. Grp., L.L.C. v. Stonebridge Partners Equity Fund, L.P.*, 6 F. Supp. 2d 236, 239 (S.D.N.Y. 1998)) (alteration in original); SEC Opp. to ICP Defs.' Partial Motion to Dismiss, at 4-5.

### e.      SECOND ELEMENT –  DOMESTIC TRANSACTION

In determining whether or not Plaintiff has proven by a preponderance of the evidence that such a purchase or sale of a security constituted a domestic transaction, you should apply Instruction III.B.5 on page 34 above.

### f.  THIRD ELEMENT – INTENT TO DEFRAUD

Next, in determining whether or not Plaintiff has proven by a preponderance of the evidence that the defendant you are considering acted with intent to defraud, you should apply Instruction III.B.6 on page 35 above.

### g.     FOURTH ELEMENT –  INSTRUMENTALITIES OF INTERSTATE COMMERCE

In determining whether or not Plaintiff has proven by a preponderance of the evidence that the defendant you are considering used or caused to be used means and instrumentalities of interstate commerce in the purchase or sale of securities, you should apply Instruction III.B.7 on page 37 above.

### h.   GOOD FAITH

Good faith is an absolute defense to Plaintiff's Section 10(b) claim.  In determining

whether the Plaintiff has proven by a preponderance of the evidence that the defendant you are

considering did not act in good faith, you should apply Instruction III.B.8 on page 38 above.

**B.      AIDING AND ABETTING**

**1.      AIDING AND ABETTING – ELEMENTS**

As I stated earlier, the plaintiff also claims that ICP, ICPS, ICP Holdco, and Tom Priore aided and abetted the other Defendants' alleged primary violation of Section 10(b).  In order to find that any defendant aided and abetted the other defendants in committing violations, you must first find that at least one defendant actually violated Section 10(b).  If you find that at least one defendant violated Section 10(b), then you must consider whether any other defendant aided and abetted that defendant's primary violation of Section 10(b).

In order to find that one of the defendants aided and abetted another defendant in violating Section 10(b), plaintiff must prove three things.

First, that at least one of the defendants violated Section 10(b);

Second, that the defendant you are considering had actual knowledge of the violation; and

Third, that the defendant you are considering substantially assisted ICP, ICPS, ICP Holdco, or Priore in its commission of the violation.

*See Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 206-07 (2d Cir. 1989); *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334 (S.D.N.Y. 2006); *SEC v. Ballesteros*, 253 F. Supp. 2d 720, 728-29 (S.D.N.Y. 2003).

## 2.      AIDING AND ABETTING – PRIMARY VIOLATION

In order to satisfy the first element, the plaintiff must prove by a preponderance of the evidence that at least one of the defendants violated Section 10(b).  I just described to you all of the elements of proof that have to be established for a primary violation of Section 10(b).  If you do not find that any of the defendants committed a violation of Section 10(b), none of the defendants can be liable for aiding and abetting.  If you find that at least one of the defendants did commit such a violation, then you must proceed to the second and third elements.

*See Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334 (S.D.N.Y. 2006).

### 3.    AIDING AND ABETTING – ACTUAL KNOWLEDGE

To satisfy the second element of its aiding and abetting claim, the plaintiff must prove

that the defendant you are considering had actual knowledge of ICP, ICPS, ICP Holdco, or

Priore's primary violation of Section 10(b).  It is insufficient for the plaintiff to prove that the

defendant acted recklessly.  The defendant you are considering must have been aware that his or

its role was part of an overall activity that was a violation of the securities laws.

*See Halberstam v. Welch*, 705 F.2d 472, 478 (D.C. Cir. 1983); *SEC v. Espuelas*, 579 F. Supp. 2d
461, 471 (S.D.N.Y. 2008); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334
(S.D.N.Y. 2006).

### 4.    AIDING AND ABETTING – SUBSTANTIAL ASSISTANCE

To prove that the defendant you are considering substantially assisted a securities violation, the plaintiff must prove two things by a preponderance of the evidence.

First, that the defendant you are considering affirmatively assisted or helped conceal the primary violation; and

Second, that the defendant you are considering proximately caused the material misrepresentations.  In other words, the defendant's conduct must have been a substantial causal factor in the perpetration of the violation.  It is not enough for the plaintiff to prove that "but for" the defendant's actions, the violations would not have occurred.  Instead the plaintiff must prove that the defendant's actions were a substantial factor in bringing about the violation, and that the violation was a reasonably foreseeable result of the defendant's acts.

Mere awareness and approval of the primary violation is insufficient to satisfy this element.

*See Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62-63 (2d Cir. 1985); *Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983); *SEC v. Espuelas*, 579 F. Supp. 2d 461, 471, 485 (S.D.N.Y. 2008) (citing *SEC v. Zwick*, No. 03 Civ. 2742 (JGK), 2007 WL 831812, at *16 (S.D.N.Y. Mar. 16, 2007)); *SEC v. Treadway*, 430 F. Supp. 2d 293, 339 (S.D.N.Y. 2006); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 335-36 (S.D.N.Y. 2006); *WestRM-West Risk Mkts., Ltd. v. XL Reins. Am., Inc.*, No. 02 Civ. 7344, 2006 WL 2034627, at *11-12 (S.D.N.Y. July 19, 2006); *McDaniel v. Bear Stearns & Co.*, 196 F. Supp. 2d 343, 352, 359 (S.D.N.Y. 2002) (citing *Cromer v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001)); *In re Union Carbide Corp. Consumer Prods. Bus. Litig.*, 666 F. Supp. 547, 564 (S.D.N.Y. 1987).

## 5.      AIDING AND ABETTING – UNANIMITY

In order to find that a defendant aided and abetted a violation of Section 10(b), all of you must agree that the defendant knowingly provided the same substantial assistance in aid of the same violation.  It is not enough if some of you find that the defendant you are considering provided substantial assistance to one violation while others of you find the defendant provided substantial assistance to a different violation.

*See* Fed. R. Civ. P. 48(b) ("Unless the parties stipulate otherwise, the verdict must be unanimous . . . ."); *United States v. Payseno*, 782 F.2d 832, 835 (9th Cir. 1986); *United States v. Gipson,* 553 F.2d 453, 458-59 (5th Cir. 1977); *United States v. Natelli*, 527 F.2d 311, 325 (2d Cir. 1975).

V.     **SECTION 15(C)(1)(A) OF THE SECURITIES EXCHANGE ACT**

A.     **PRIMARY VIOLATION**

Plaintiff also alleges that ICPS violated Section 15(c)(1)(A) of the Exchange Act and Rule 10b-3 promulgated thereunder, and that Defendants ICP and Priore aided and abetted that violation.  Section 15(c)(1)(A) provides that "no broker or dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security . . . by means of any manipulative, deceptive, or other fraudulent device or contrivance."

To prove its Section 15(c)(1)(A) claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence as to ICPS:

First, that ICPS effected a transaction in, or induced or attempted to induce the purchase or sale of, a security by means of an untrue statement of a material fact or by omitting to state a material fact necessary under the circumstances to keep the statements that were made from being misleading;

Second, that such transaction, purchase or sale of a security was a domestic transaction;

Third, that ICPS acted with intent to defraud; and

Fourth, that ICPS used or caused to be used, means and instrumentalities of interstate commerce, such as mail or telephone.

*See* 15 U.S.C. § 78o(c)(1)(A); *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010); *SEC v. George*, 426 F.3d 786, 792 (6th Cir. 2005); *SEC. v. Morgan Keegan & Co.*, No. 1:09-CV-1965-WSD, __ F. Supp. 2d __, 2011 WL 2559362, at *6 (N.D. Ga. June 28, 2011) ("The elements of a section 15(c)(1) claim are the same as a section 10(b) claim."); *SEC v. Pasternak*, 561 F. Supp. 2d 459, 514 (D.N.J. 2008); *SEC v. Wexler*, No. 92 Civ. 2902 (SWK), 1993 WL 362390, at *5 n.6 (S.D.N.Y. Sept. 14, 1993); *Darvin v. Bache Halsey Stuart Shields, Inc.*, 479 F. Supp. 460, 464 (S.D.N.Y. 1979) ("[W]e find that the same scienter standard applies to sections 10(b) and 15(c), and Rules 10b-5 and 15cl-2.").

### 1.    FIRST ELEMENT – UNTRUE STATEMENT

In determining whether Plaintiff has proven by a preponderance of the evidence

that ICPS made an untrue statement of a material fact, you should apply Instruction III.B.1 on

page 27 above.

### 2.     FIRST ELEMENT – MATERIALITY

In determining whether Plaintiff has proven by a preponderance of the evidence

that the alleged misstatement was material, you should apply Instruction III.B.2 on page 29

above.

### 3.     FIRST ELEMENT – UNTRUE STATEMENT – UNANIMITY

In order to find that a defendant made an untrue statement of a material fact, all of you must agree that the same statement was false.  You should apply Instruction III.B.3 on page 31 above.

### 4.      FIRST ELEMENT – "IN CONNECTION WITH" THE TRANSACTION, PURCHASE OR SALE OF A SECURITY

In determining whether Plaintiff has proven by a preponderance of the evidence that ICPS effected a transaction in, or induced or attempted to induce the purchase or sale of, a security by means of an untrue statement of a material fact, you should apply Instruction IV.A.1.d on page 54 above.

### 5.    SECOND ELEMENT –  DOMESTIC TRANSACTION

In determining whether or not Plaintiff has proven by a preponderance of the evidence that such a transaction, purchase or sale of a security constituted a domestic transaction, you should apply Instruction III.B.5 on page 34 above.

**6.      THIRD ELEMENT – INTENT TO DEFRAUD**

Next, in determining whether or not Plaintiff has proven by a preponderance of the evidence that ICPS acted with intent to defraud, you should apply Instruction III.B.6 on page 35 above.

**7.      FOURTH ELEMENT –  INSTRUMENTALITIES OF INTERSTATE COMMERCE**

In determining whether or not Plaintiff has proven by a preponderance of the evidence that ICPS used or caused to be used means and instrumentalities of interstate commerce in the transaction, purchase or sale of securities, you should apply Instruction III.B.7 on page 37 above.

## 8.    GOOD FAITH

Good faith is an absolute defense to Plaintiff's Section 15(c)(1)(A) claim.  In determining whether the Plaintiff has proven by a preponderance of the evidence that ICPS did not act in good faith, you should apply Instruction III.B.8 on page 38 above.

**B.     AIDING AND ABETTING – ELEMENTS**

Only if you find that ICPS committed a primary violation of Section 15(c)(1)(A) should you consider whether ICP or Priore aided and abetted that primary violation.

To establish that either ICP or Priore aided and abetted ICPS in violating Section 15(c)(1)(A), Plaintiff must prove three things by a preponderance of the evidence:

First, that ICPS violated Section 15(c)(1)(A) of the Exchange Act, as I just described to you;

Second, that the defendant you are considering had actual knowledge of the alleged violation; and

Third, that the defendant you are considering substantially assisted ICPS in its commission of the alleged violation.

*See Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 206-07 (2d Cir. 1989); *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334 (S.D.N.Y. 2006); *SEC v. Ballesteros*, 253 F. Supp. 2d 720, 728-29 (S.D.N.Y. 2003).

### 1.   AIDING AND ABETTING – PRIMARY VIOLATION

In order to satisfy the first element, the plaintiff must prove by a preponderance of the evidence that ICPS violated Section 15(c)(1)(A).  I just described to you all of the elements of proof that have to be established for a primary violation of Section 15(c)(1)(A).  If you do not find that ICPS committed a violation of Section 15(c)(1)(A), none of the defendants can be liable for aiding and abetting.  If you find that ICPS did commit such a violation, then you must proceed to the second and third elements.

*See Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334 (S.D.N.Y. 2006).

## 2.    AIDING AND ABETTING – ACTUAL KNOWLEDGE

To satisfy the second element of its aiding and abetting claim, the plaintiff must prove that the defendant you are considering had actual knowledge of ICPS's primary violation of Section 15(c)(1)(A).  In deciding whether or not the Plaintiff has proven this element by a preponderance of the evidence, you should apply Instruction IV.B.3 on page 62 above.

### 3.     AIDING AND ABETTING – SUBSTANTIAL ASSISTANCE

To satisfy the third element of its aiding and abetting claim, the plaintiff must prove that the defendant you are considering substantially assisted ICPS's alleged primary violation of Section 15(c)(1)(A).  In deciding whether or not the Plaintiff has proven this element by a preponderance of the evidence, you should apply Instruction IV.B.4 on page 63 above.

### 4.   AIDING AND ABETTING – UNANIMITY

In order to find that a defendant aided and abetted a violation of Section 15(c)(1)(A), all of you must agree that the defendant knowingly provided the same substantial assistance in aid of the same violation.   You should apply Instruction IV.B.5 on page 64 above.

## VI.    ADVISERS ACT CLAIMS

### A.    SECTION 206 GENERALLY

The SEC also alleges that ICP and Priore committed fraud in violation of Sections 206(1), (2), (3), and (4) of the Investment Advisers Act, and that ICPS, ICP Holdco, and Priore aided and abetted ICP's alleged primary violations of Sections 206(1), (2), and (4), and that Priore aided and abetted ICP's alleged primary violation of Section 206(3).

Section 206 is divided into four subsections, 206(1), 206(2), 206(3), and 206(4), and states as follows:

> "It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—(1) to employ any device, scheme, or artifice to defraud any client or prospective client; (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client; (3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client to such transaction. . . .  ; (4)  to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. The Commission shall, for the purposes of this paragraph (4) by rules and regulations define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative."

*See* 15 U.S.C. § 80b-6 (2006).

**B.      SECTION 206(1) – ELEMENTS**

To prove its Section 206(1) claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence as to the defendant you are considering:

First, that the defendant was acting as an investment adviser and that it directly or indirectly employed a device, scheme, or artifice to defraud any client or prospective client;

Second, that the defendant you are considering acted with intent to defraud;

Third, that the defendant you are considering used the mails or any means or instrumentality of interstate commerce in furtherance of the fraud; and

Fourth, that the alleged fraudulent conduct falls within the domestic scope of the Advisers Act.

*See* 15 U.S.C. § 80b-6(1); *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010); Charge to the Jury in *SEC v. Seghers*, Civ. No. 04-1320 (N.D. Tex. Mar. 1, 2006), *available at* 2006 WL 1373081.

## 1.    FIRST ELEMENT – UNTRUE STATEMENT

The Plaintiff must prove by a preponderance of the evidence that the defendant you are considering was acting as an investment adviser and that it directly or indirectly employed a device, scheme, or artifice to defraud any client or prospective client.  A device, scheme, or artifice to defraud means an untrue statement of material fact that is false when it is made.  In determining whether or not a statement concerning a given material fact was true and accurate, the truth and accuracy must be evaluated on the basis of the circumstances that existed at the time the statement was made.  A statement regarding a material fact may not be held false merely because subsequent events prove it to be false.   A defendant is not required to use a particular set of words to express a material fact.

Next, the Plaintiff must prove that the untrue statement of material fact defrauded a "client or prospective client."  As relevant to this case, ICP's clients were the Triaxx CDOs, SCIF, and Seychelles (as opposed to individual investors in the funds, who were not clients of ICP).

 The Plaintiff must also prove by a preponderance of the evidence that the defendant you are considering actually made the alleged false statement.  Merely taking part in the decision to make a statement or even being intricately involved in making the statement is not sufficient.  Nor is it sufficient for the Plaintiff to prove that the defendant you are considering approved the making of a false or misleading statement by another, even if the defendant had knowledge that the statement was false or misleading.  Instead, the Plaintiff must prove by a preponderance of the evidence that the defendant you are considering had ultimate authority over the statement, including its content and whether and how to communicate it.

*See* 3 O'Malley, et al., *Federal Jury Practice and Instructions* § 162.235 (6th ed. 2011); *Janus Capital Grp. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011); *Goldstein v. SEC*, 451 F.3d 873, 882 (D.C. Cir. 2006); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) ("[A] defendant must actually make a false or misleading statement in order to be held [primarily] liable under Section 10(b).  Anything short of such conduct is merely aiding and abetting . . . .") (quotation marks omitted); *Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 584 F.2d 1195, 1200 (2d Cir. 1978) ("There is no requirement that a material fact be expressed in certain words or in a certain form of language.") (quotation marks omitted); *SEC v. Kelly*, No. 08 Civ. 4612 (CM), 2011 WL 4431161, at *3-4 (S.D.N.Y. Sept. 22, 2011); *SEC v. Mannion*, 789 F. Supp. 2d 1321, 1338 (N.D. Ga. 2011); *SRM Global Fund L.P. v. Countrywide Fin. Corp.*, No. 09 Civ. 5064 (RMB), 2010 WL 2473595 (S.D.N.Y. June 17, 2010); *SEC v. May,* 648 F. Supp. 2d 70, 77-78 (D.D.C. 2009); *SEC v. Northshore Asset Mgmt.*, No. 05 Civ. 2192 (WHP), 2008 WL 1968299, at *6 (S.D.N.Y. May 5, 2008); *SEC v. KPMG LLP,* 412 F. Supp. 2d 349, 374-75 (S.D.N.Y. 2006); *SEC v. Pimco Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 466 (S.D.N.Y. 2004) ("[A] defendant must actually make a false or misleading statement in order to be held [primarily] liable . . . .") (second alteration in original) (quotation marks omitted); Rules Under the Investment Advisers Act of 1940, SEC R. 203(b)(3)-(1)(a)(2)(i) (defining "client" as the "corporation . . . that receives investment advice based on its investment objectives rather than the individual investment objectives of its shareholders").

## 2.   FIRST ELEMENT – MATERIALITY

The plaintiff must prove by a preponderance of the evidence that the alleged misrepresentation, if there was one, of the defendant you are considering was material to the client or prospective client at the time the statement was made.  In deciding whether or not the alleged misrepresentation was material, you should apply Instruction III.B.2 on page 29 above.

### 3.     FIRST ELEMENT – UNTRUE STATEMENT – UNANIMITY

In order to find that a defendant made an untrue statement of a material fact, all of you must agree that the same statement was false.  You should apply Instruction III.B.3 on page 31 above.

## 4.     SECOND ELEMENT – INTENT TO DEFRAUD

Next, in determining whether or not Plaintiff has proven by a preponderance of the evidence that the defendant you are considering acted with intent to defraud, you should apply Instruction III.B.6 on page 35 above.

**5.     THIRD ELEMENT –  INSTRUMENTALITIES OF INTERSTATE COMMERCE**

In determining whether or not Plaintiff has proven by a preponderance of the evidence that the defendant you are considering used or caused to be used means and instrumentalities of interstate commerce in furtherance of the fraud, you should apply Instruction III.B.7 on page 37 above.

###### 6.    FOURTH ELEMENT – DOMESTIC TRANSACTION

Next, the Plaintiff must prove by a preponderance of the evidence that the conduct alleged falls within the domestic scope of the Advisers Act.  In other words, if the alleged fraudulent conduct concerns transactions, as it does here, then those transactions must be domestic.  The scope of the Advisers Act does not extend to the activity of investment advisers with respect to foreign clients engaging in foreign transactions.  In determining whether or not the transactions at issue constitute domestic transactions, you should apply Instruction III.B.5 on page 34 above.

*See Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010).

**7.    GOOD FAITH**

Good faith is an absolute defense to Plaintiff's Section 206(1) claim.  In determining whether the Plaintiff has proven by a preponderance of the evidence that the defendant you are considering did not act in good faith, you should apply Instruction III.B.8 on page 38 above.

## C.   SECTION 206(2)

If you find that ICP or Priore did not violate Section 206(1) because Plaintiff did not prove intent to defraud by a preponderance of the evidence, you must still consider whether or not that defendant violated Section 206(2).

To establish that a defendant violated Section 206(2), the Plaintiff must prove each of the following elements by a preponderance of the evidence:

First, that the defendant was acting as an investment adviser and that it directly or indirectly employed a device, scheme, or artifice to defraud any client or prospective client;

Second, that the defendant you are considering acted with negligence;

Third, that the defendant you are considering used the mails or any means or instrumentality of interstate commerce in furtherance of the fraud; and

Fourth, that the alleged fraudulent conduct falls within the domestic scope of the Advisers Act.

*See* 15 U.S.C. § 80b-6(1); *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92 (1963); Charge to the Jury in *SEC v. Seghers*, Civ. No. 04-1320 (N.D. Tex. Mar. 1, 2006), *available at* 2006 WL 1373081.

### 1.      FIRST ELEMENT – UNTRUE STATEMENT

In determining whether or not Plaintiff has proven by a preponderance of the evidence that the defendant you are considering directly or indirectly employed a device, scheme, or artifice to defraud any client or prospective client, you should apply Instruction VI.B.1 on page 81 above.

### 2.  FIRST ELEMENT – MATERIALITY

In determining whether Plaintiff has proven by a preponderance of the evidence that the alleged misstatement was material, you should apply Instruction VI.B.2 on page 83 above.

### 3. FIRST ELEMENT – UNTRUE STATEMENT – UNANIMITY

In order to find that a defendant made an untrue statement of a material fact, all of you must agree that the same statement was false.  You should apply Instruction III.B.3 on page 31 above.

### 4.   SECOND ELEMENT – NEGLIGENCE

Next, in determining whether or not Plaintiff has proven by a preponderance of the evidence that the defendant you are considering acted with negligence, you should apply Instruction III.C.7 on page 48 above.

**5.      THIRD ELEMENT –  INSTRUMENTALITIES OF INTERSTATE COMMERCE**

In determining whether or not Plaintiff has proven by a preponderance of the evidence that the defendant you are considering used or caused to be used means and instrumentalities of interstate commerce in furtherance of the fraud, you should apply Instruction III.B.7 on page 37 above.

### 6.      FOURTH ELEMENT – DOMESTIC TRANSACTION

Next, the Plaintiff must prove by a preponderance of the evidence that the conduct

alleged falls within the domestic scope of the Advisers Act.  In determining whether Plaintiff has

proven this element, you should apply Instruction VI.B.6 on page 87 above.

## D.    SECTION 206(3) – ELEMENTS

The SEC also alleges that ICP and Priore violated Section 206(3) of the Advisers Act.

To prove its 206(3) claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence as to the defendant you are considering:

First, that the defendant was acting as an investment adviser and that the defendant knowingly sold a security to a client from his own account or knowingly purchased a security from a client into his own account, or knowingly arranged a transaction between different advisory clients while at the same time receiving compensation for the transaction other than an advisory or management fee;

Second, that the defendant you are considering did not disclose to the client in writing before the completion of the transaction the capacity in which the defendant was acting and did not obtain the consent of the client to the transaction;

Third, that the defendant you are considering used the mails or any means or instrumentality of interstate commerce to commit the above acts; and

Fourth, that the transaction was a domestic transaction.

*See* 15 U.S.C. § 80b-6(3); *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010); SEC Release No. 1732 (July 17, 1998), *available at* 1998 WL 400409, at *4-5.

     **1.**     **FIRST ELEMENT – PRINCIPAL TRADE OR AGENCY TRADE WITH COMPENSATION OTHER THAN ADVISORY OR MANAGEMENT FEE**

First, the Plaintiff must prove by a preponderance of the evidence that the defendant was acting as an investment adviser and that the defendant knowingly sold a security to a client from his own account or knowingly purchased a security from a client into his own account, or knowingly arranged a transaction between different advisory clients while at the same time receiving compensation for the transaction other than an advisory or management fee.  It is not sufficient for the Plaintiff to prove that the defendant you are considering knowingly arranged a transaction between different advisory clients and simply received his regular advisory or management fee for doing so; rather, the Plaintiff must prove that the defendant you are considering received some additional compensation for the transaction, such as a commission for the specific transaction.  Once again, as relevant to this case, ICP's clients were the Triaxx CDOs, SCIF, and Seychelles (as opposed to individual investors in the funds, who were not clients of ICP).

*See* 15 U.S.C. § 80b-6(3); *Goldstein v. SEC*, 451 F.3d 873, 882 (D.C. Cir. 2006); SEC Release No. 1732 (July 17, 1998), *available at* 1998 WL 400409, at *4-5.

### 2.   SECOND ELEMENT – DISCLOSURE OF CAPACITY AND CONSENT

Second, the SEC must establish by a preponderance of the evidence that the defendant you are considering did not disclose to the client in writing before the completion of the transaction the capacity in which the defendant was acting and did not obtain the consent of the client to the transaction.  In order to inform a client of the capacity in which it was acting, the defendant must inform the client if it is acting as principal or agent.

*See* 15 U.S.C. § 80b-6(3); SEC Release No. 1732 (July 17, 1998), *available at* 1998 WL 400409, at *4-5.

### 3.   THIRD ELEMENT –  INSTRUMENTALITIES OF INTERSTATE COMMERCE

In determining whether or not Plaintiff has proven by a preponderance of the evidence that that the defendant you are considering used the mails or any means or instrumentality of interstate commerce to commit the acts I just described to you, you should apply Instruction III.B.7 on page 37 above.

*See* 15 U.S.C. § 80b-6(3).

### 4.     FOURTH ELEMENT – DOMESTIC TRANSACTION

In determining whether or not Plaintiff has proven by a preponderance of the evidence that that the transaction was a domestic transaction, you should apply Instruction III.B.5 on page 34 above.


*See* 15 U.S.C. § 80b-6(3); *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010).

### E.    SECTION 206(4) AND RULE 206(4)-8 – ELEMENTS

The SEC also alleges that ICP and Tom Priore violated Section 206(4) of the Advisers

Act and Rule 206(4)-8 promulgated thereunder.  Section 206(4) states that "[i]t shall be unlawful

for any investment adviser, by use of the mails or any means or instrumentality of interstate

commerce, directly or indirectly—(4) to engage in any act, practice, or course of business which

is fraudulent, deceptive, or manipulative."  For purposes of this Section only, "a fraudulent,

deceptive, or manipulative act, practice, or course of business within the meaning of" Section

206(4) means for an investment adviser to "(1) [m]ake any untrue statement of a material fact or

to omit to state a material fact necessary to make the statements made, in the light of the

circumstances under which they were made, not misleading, to any investor or prospective

investor in the pooled investment vehicle; or (2) otherwise engage in any act, practice, or course

of business that is fraudulent, deceptive, or manipulative with respect to any investor or

prospective investor in the pooled investment vehicle."

To prove its 206(4) claim, the SEC has the burden of proving each of the following

elements by a preponderance of the evidence as to the defendant you are considering:

First, that the defendant was acting as an investment adviser and made an untrue

statement of a material fact, or omitted to state a material fact necessary under the circumstances

to keep the statements that were made from being misleading, to any investor or prospective

investor in a Triaxx CDO or SCIF;

Second, that the defendant acted with intent to defraud;

Third, that the defendant you are considering used the mails or any means or

instrumentality of interstate commerce in furtherance of the fraud; and

- 101 -

Fourth, that the alleged fraudulent conduct falls within the domestic scope of the Advisers Act.

You may only consider conduct occurring after September 10, 2007 in determining whether any Defendant violated Section 206(4).  Thus, you may not consider the purchase of BSAM bonds by ICP or the sale of those bonds to Moore in determining whether ICP or Priore violated this Section.  Nor may you consider any other conduct occurring before September 10, 2007.

*See* 15 U.S.C. § 80b-6(4); 17 C.F.R. 275.206(4)-8; *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010); *Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1, 8 (1985); *Aaron v. SEC*, 446 U.S. 680, 691 (1980); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976); SEC Release No. 2628 (Aug. 3, 2007), *available at* 2007 WL 2239114, at *10-12.

### 1. FIRST ELEMENT – UNTRUE STATEMENT TO INVESTOR IN POOLED INVESTMENT VEHICLE

First, the Plaintiff must prove by a preponderance of the evidence that the defendant you are considering was acting as an investment adviser and that it made an untrue statement of a material fact to an investor or prospective investor in a Triaxx CDO or SCIF.  In determining whether or not Plaintiff has proven this element by a preponderance of the evidence, you should apply Instruction III.B.1 on page 27 above.

Again, you may only consider conduct occurring after September 10, 2007 in determining whether any Defendant violated Section 206(4).  Thus, you may not consider the purchase of BSAM bonds by ICP or the sale of those bonds to Moore in determining whether ICP or Priore violated this Section.  Nor may you consider any other conduct occurring before September 10, 2007.

*See* 15 U.S.C. § 80b-6(4); 17 C.F.R. 275.206(4)-8; SEC Release No. 2628 (Aug. 3, 2007), *available at* 2007 WL 2239114, at *10-12.

## 2.      FIRST ELEMENT – MATERIALITY

The plaintiff must prove by a preponderance of the evidence that the alleged misrepresentation, if there was one, of the defendant you are considering was material to the investor or prospective investor at the time the statement was made.  In deciding whether or not the alleged misrepresentation was material, you should apply Instruction III.B.2 on page 29 above.

### 3.        FIRST ELEMENT – UNTRUE STATEMENT – UNANIMITY

In order to find that a defendant made an untrue statement of a material fact, all of you must agree that the same statement was false.  You should apply Instruction III.B.3 on page 31 above.

### 4.    SECOND ELEMENT – INTENT TO DEFRAUD

Next, in determining whether or not Plaintiff has proven by a preponderance of the evidence that the defendant you are considering acted with intent to defraud, you should apply Instruction III.B.6 on page 35 above.

### 5.      THIRD ELEMENT –  INSTRUMENTALITIES OF INTERSTATE COMMERCE

In determining whether or not Plaintiff has proven by a preponderance of the evidence that the defendant you are considering used or caused to be used means and instrumentalities of interstate commerce in furtherance of the fraud, you should apply Instruction III.B.7 on page 37 above.

### 6.    FOURTH ELEMENT – DOMESTIC TRANSACTION

Next, the Plaintiff must prove by a preponderance of the evidence that the conduct alleged falls within the domestic scope of the Advisers Act.  In determining whether the SEC has proven this element, you should apply Instruction VI.B.6 on page 87 above.

### 7.   GOOD FAITH

Good faith is an absolute defense to Plaintiff's Section 206(4) claim.  In determining whether the Plaintiff has proven by a preponderance of the evidence that the defendant you are considering did not act in good faith, you should apply Instruction III.B.8 on page 38 above.

**F.     AIDING AND ABETTING – ELEMENTS**

Plaintiff also alleges that ICPS, ICP Holdco, and Priore aided and abetted ICP's alleged primary violations of Sections 206(1), (2), and (4), and that Priore aided and abetted ICP's alleged primary violation of Section 206(3).  Only if you find that ICP committed a primary violation of Section 206(1), (2), (3), or (4) should you consider whether another defendant aided and abetted the primary violation of that Section.

To find that any defendant aided and abetted ICP in violating the Advisers Act, Plaintiff must prove three things by a preponderance of the evidence:

First, that ICP violated Section 206(1), (2), (3), or (4) of the Advisers Act, as I just described to you;

Second, that the defendant you are considering had actual knowledge of the violation; and

Third, that the defendant you are considering substantially assisted ICP in the commission of the violation.

*See Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 206-07 (2d Cir. 1989); *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334 (S.D.N.Y. 2006); *SEC v. Ballesteros*, 253 F. Supp. 2d 720, 728-29 (S.D.N.Y. 2003).

### 1.    AIDING AND ABETTING – PRIMARY VIOLATION

In order to satisfy the first element, the plaintiff must prove by a preponderance of the evidence that ICP violated Section 206(1), (2), (3), or (4) of the Advisers Act.  I just described to you all of the elements of proof that have to be established for a primary violation of Section 206(1), (2), (3), or (4) of the Advisers Act.  If you do not find that ICP committed a violation of Section 206(1), (2), (3), or (4), none of the defendants can be liable for aiding and abetting.  If you find that ICP did commit such a violation, then you must proceed to the second and third elements.

*See* 15 U.S.C. § 78t(e); *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983); *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334 (S.D.N.Y. 2006).

## 2.    AIDING AND ABETTING – ACTUAL KNOWLEDGE

To satisfy the second element of its aiding and abetting claim, the plaintiff must prove that the defendant you are considering had actual knowledge of ICP's alleged primary violation of Section 206(1), (2), (3), or (4).  In deciding whether or not the Plaintiff has proven this element by a preponderance of the evidence, you should apply Instruction IV.B.3 on page 62 above.

### 3.     AIDING AND ABETTING – SUBSTANTIAL ASSISTANCE

To satisfy the second element of its aiding and abetting claim, the plaintiff must prove that the defendant you are considering substantially assisted ICP's alleged primary violation of Section 206(1), (2), (3), or (4).  In deciding whether or not the Plaintiff has proven this element by a preponderance of the evidence, you should apply Instruction IV.B.4 on page 63 above.

### 4.    AIDING AND ABETTING – UNANIMITY

In order to find that a defendant aided and abetted a violation of Section 206(1), (2), (3), or (4), all of you must agree that the defendant knowingly provided the same substantial assistance in aid of the same violation.  You should apply Instruction IV.B.5 on page 64 above.

## VII.    COMPLIANCE AND RECORD-KEEPING CLAIMS

### A.    SECTION 204 – ELEMENTS

Plaintiff also alleges that ICP violated two provisions of the Advisers Act related to compliance and record-keeping: first, Section 204, and second, Section 206(4) and Rule 206(4)-7.  Section 204 states as follows:

> "Every investment adviser who makes use of the mails or of any means or instrumentality of interstate commerce in connection with his or its business as an investment adviser (other than one specifically exempted from registration pursuant to section 80b-3(b) of this title), shall make and keep for prescribed periods such records (as defined in section 78c(a)(37) of this title), furnish such copies thereof, and make and disseminate such reports as the Commission, by rule, may prescribe as necessary or appropriate in the public interest or for the protection of investors.

To prove its Section 204 claim, the SEC has the burden of proving the following by a preponderance of the evidence:

First, that ICP was not exempted from registering as an investment adviser pursuant to section 80b-3(b) of the Investment Advisers Act; and

Second, that ICP failed to make and keep true, accurate and current memoranda of each order given by ICP for the purchase or sale of any security, showing the terms and conditions of the order, identifying the person who placed such order, and showing the account for which entered and the date of entry; or that ICP failed to make and keep true, accurate and current copies of all written agreements entered into by ICP with any client.

*See* 15 U.S.C. § 80b-4; *SEC v. Slocum, Gordon & Co.*, 334 F. Supp. 2d 144, 179-80 (D.R.I. 2004).

## 1.    FIRST ELEMENT – NOT EXEMPT FROM REGISTERING

First, the SEC must prove by a preponderance of the evidence that ICP was not exempted from registering as an investment adviser pursuant to section 80b-3(b) of the Investment Advisers Act.  This means that the SEC must prove that (1) ICP had fifteen or more clients during the twelve months preceding the violation, and (2) ICP held itself out generally to the public as an investment adviser.

*See* 15 U.S.C. § 80b-4; 15 U.S.C. § 80b-3.

### 2.     SECOND ELEMENT – TRUE, ACCURATE, AND CURRENT MEMORANDA

Next, the Plaintiff must prove by a preponderance of the evidence that ICP failed to make and keep true, accurate and current memoranda of each order given by ICP for the purchase or sale of any security, showing the terms and conditions of the order, identifying the person who placed such order, and showing the account for which entered and the date of entry; or that ICP failed to make and keep true, accurate and current copies of all written agreements entered into by ICP with any client.

*See* 15 U.S.C. § 80b-4; 17 C.F.R. § 275.204-2; *SEC v. Slocum, Gordon & Co.*, 334 F. Supp. 2d 144, 179-80 (D.R.I. 2004).

**B.     SECTION 206(4) AND RULE 206(4)-7**

The SEC has also alleged that ICP violated Section 206(4) of the Investment Advisers

Act and Rule 206(4)-7 promulgated thereunder.  Section 206(4) of the Investment Advisers Act

provides as follows:

> "It shall be unlawful for any investment adviser, by use of the
> mails or any means or instrumentality of interstate commerce,
> directly or indirectly—(4)  to engage in any act, practice, or course
> of business which is fraudulent, deceptive, or manipulative. The
> Commission shall, for the purposes of this paragraph (4) by rules
> and regulations define, and prescribe means reasonably designed to
> prevent, such acts, practices, and courses of business as are
> fraudulent, deceptive, or manipulative."

Rule 206(4)-7 states that it shall be unlawful for an investment adviser to provide

investment advice to clients unless it "[a]dopt[s] and implement[s] written policies and

procedures reasonably designed to prevent violation, by [the adviser] and [the adviser's]

supervised persons, of the Act and the rules that the Commission has adopted under the Act" and

"[d]esignate[s] an individual (who is a supervised person) responsible for administering the

policies and procedures that you adopt under . . . this section."

*See* 15 U.S.C. § 80b-6(4); 17 C.F.R. § 275.206(4)-7.

1.    **SECTION 206(4) AND RULE 206(4)-7 – ELEMENTS**

To prove its Section 206(4) and Rule 206(4)-7 claim, the SEC has the burden of proving

the following by a preponderance of the evidence:

That ICP was acting as an investment adviser and failed to "[a]dopt and implement

written policies and procedures reasonably designed to prevent violation" of the Advisers Act, or

that ICP failed to "designate an individual responsible for administering such policies and

procedures."  Section 204 and Rule 204-2 do not require investment advisers to adopt any

specific policies and procedures, only that such policies and procedures be "reasonably

designed" to prevent violation of the Act.

*See* 15 U.S.C. § 80b-6(4); 17 C.F.R. § 275.206(4)-7; Compliance Programs of Inv. Cos. and Inv.
Advisers, Advisers Act. Rel. 2204, 68 Fed. Reg. 74,714, 74,715 (Dec. 24, 2003).

## VIII.   SECTION 20(A) CONTROL PERSON CLAIM

### A.   ELEMENTS

I have described to you what plaintiff must prove with respect to each defendant to prevail on its claim that the defendant committed a primary violation of Section 10(b) or Section 15(c)(1)(A).  Those Sections are Claims 2 and 3 of the Amended Complaint, and I have listed the elements the SEC is required to prove by a preponderance of the evidence in order for you to find a violation of those statutes on pages 50-59 and 65-73 above.  If you conclude that ICP or ICPS was a primary violator of Section 10(b), but that Mr. Priore was not a primary violator of Section 10(b), or that ICPS was a primary violator of Section 15(c)(1)(A), you must consider whether Mr. Priore is liable as a "controlling person" as defined by the law.  If you conclude that neither ICP nor ICPS was a primary violator of Section 10(b), and that ICPS was not a primary violator of Section 15(c)(1)(A), you need not consider this claim.

To prove that Mr. Priore is liable as a so-called "controlling person," plaintiff must prove the following three elements by a preponderance of the evidence:

First, that ICP or ICPS committed a Section 10(b) violation or that ICPS committed a violation of Section 15(c)(1)(A);

Second, that Mr. Priore controlled ICP (if you find that ICP committed a Section 10(b) violation) or that Mr. Priore controlled ICPS (if you find that ICPS committed a violation of Section 10(b) or Section 15(c)(1)(A)); and

Third, that Mr. Priore was a culpable participant in the 10(b) or 15(c)(1)(A) violation.

*See* 15 U.S.C. § 78t(a); *H&H Acquisition Corp. v. Fin. Intranet Holdings*, 669 F. Supp. 2d 351, 361 (S.D.N.Y. 2009).

## 1.    FIRST ELEMENT – PRIMARY VIOLATION

First, in order for you to consider this claim, the SEC must establish that ICP committed a Section 10(b) violation or that ICPS committed a violation of Section 10(b) or Section 15(c)(1)(A).  If you conclude that ICP was not a primary violator of Section 10(b) and that ICPS was not a primary violator of Section 10(b) or Section 15(c)(1)(A), you need not consider this claim.  I explained the elements of a Section 10(b) violation on pages 50-59 above, and I explained the elements of a Section 15(c)(1)(A) violation on pages 65-73 above.

*See H&H Acquisition Corp. v. Fin. Intranet Holdings*, 669 F. Supp. 2d 351, 361 (S.D.N.Y. 2009); *Redtail Leasing, Inc. v. Thrasher (In re Motel 6 Sec. Litig.)*, 161 F. Supp. 2d 227, 238 (S.D.N.Y. 2001) (citing *In re Blech Sec. Litig.*, 961 F. Supp. 569, 587 (S.D.N.Y. 1997)).

## 2.   SECOND ELEMENT – CONTROL

Next, the Plaintiff must prove by a preponderance of the evidence that Mr. Priore

controlled ICP or ICPS.  This requires that the Plaintiff prove by a preponderance of the

evidence that Mr. Priore possessed the actual power or ability, in practice, to direct or cause the

direction of the actions of ICP or ICPS constituting the alleged violation.

*See H&H Acquisition Corp. v. Fin. Intranet Holdings*, 669 F. Supp. 2d 351, 361 (S.D.N.Y. 2009).

### 3.   THIRD ELEMENT – CULPABLE PARTICIPANT

Next, to establish that Mr. Priore was a "culpable participant" in a primary violation, the Plaintiff must prove by a preponderance of the evidence that Mr. Priore acted with knowledge that ICP or ICPS was engaging in fraudulent or deceptive conduct.  In the case of alleged inaction, plaintiff must show that Mr. Priore's alleged inaction was deliberate and done intentionally to further the alleged violation.

*See* ABA, *Model Jury Instructions: Securities Litigation* § 4.03[1] (1996); *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 1998 WL 167330, at *13 (S.D.N.Y. Apr. 8, 1998).

### 4.      GOOD FAITH

Good faith is an absolute defense to Plaintiff's Section 20(a) control person claim.  In determining whether Mr. Priore acted in good faith, you should apply Instruction III.B.8 on page 38 above.

## IX.    CIRCUMSTANCES AFFECTING POTENTIAL PENALTIES

Should you determine that any of the Defendants committed a violation of one or more of the securities laws described above, you must then determine whether the SEC has proven by a preponderance of the evidence as to each such Defendant that the violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.

In determining whether or not Plaintiff has proven by a preponderance of the evidence that a violation involved fraud, deceit, or manipulation, you should apply Instruction Nos. III.B.6 and VI.B.1 on pages 35 and 81 above.

If you find that Plaintiff has proven by a preponderance of the evidence that a violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement, then you must determine whether that violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

*See, e.g.,* 15 U.S.C. §77t.

## X.     FRAUDULENT TRANSFER – N.Y. DEBTOR & CREDITOR LAW

Plaintiff has also brought claims alleging that Mr. Priore fraudulently transferred property in New York, and Mr. Priore and his wife, Lori Priore, fraudulently transferred property in Massachusetts in violation of New York's Debtor and Creditor Law.

Plaintiff has brought claims related to these transactions under three separate sections of New York's Debtor and Creditor Law—273, 275, and 276.  I will read each section to you in turn, and explain the essential elements that plaintiff must prove to establish its claims.

### A.     N.Y. DEBTOR AND CREDITOR LAW – SECTION 273

#### 1.     SECTION 273 – ELEMENTS

Section 273 concerns constructive fraud and it provides:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

To prevail on its claim under Section 273, plaintiff must prove the following three elements by a preponderance of the evidence: first, that Mr. Priore conveyed the New York property and Mr. and Mrs. Priore conveyed the Massachusetts property to a transferee; second, that the transfers were made without fair consideration; and third, that Mr. and Mrs. Priore were insolvent or were thereby rendered insolvent.

The first two elements are not in dispute, so you need only consider whether the third element, insolvency, has been proven by a preponderance of the evidence.  If you find that insolvency has not been proven by a preponderance of the evidence, then your verdict must be in favor of defendants.  If, however, you find that insolvency has been proven by a preponderance of the evidence, then your verdict must be for plaintiff.

*See United States v. McCombs*, 30 F.3d 310, 323 (2d Cir. 1994) (setting forth the elements of a claim under Section 273); *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 376 (S.D.N.Y. 2003) (same), *aff'd*, 99 F. App'x 274 (2d Cir. 2004); *Kittay v. Flutie N.Y. Corp. (In re Flutie New York Corp.)*, 310 B.R. 31, 52 (Bankr. S.D.N.Y. 2004) (same).

## 2.     THIRD ELEMENT – INSOLVENCY – BURDEN OF PROOF

When property is transferred for less than fair consideration, it is presumed the transfer

made the transferor insolvent and the burden then falls on the defendant to rebut the presumption

of insolvency.  However, if those defending the conveyance, Mr. and Mrs. Priore, come forward

with some evidence of solvency, the burden of persuasion remains with the SEC, the party

seeking to set aside the conveyance.  Thus, if you determine that the Priores have presented some

evidence of their solvency at the time of the transfers, the burden remains with the SEC to prove

that they were insolvent by a preponderance of the evidence.


*See Geltzer v. Borriello (In re Borriello)*, 329 B.R. 367, 377 (Bankr. E.D.N.Y. 2005) (explaining
the burden shifting analysis when no consideration for transfer); *Geron v. Schulman (In re
Manshul Constr. Corp.)*, 2000 WL 1228866, at *53 (S.D.N.Y. Aug. 30, 2000) ("Under DCL
§ 273, there is a long-recognized presumption of insolvency where the debtor makes a
conveyance without fair consideration."); *MFS/Sun Life Trust-High Yield Series v. Van Dusen
Airport Servs. Co.*, 910 F. Supp. 913, 938 (S.D.N.Y. 1995) (burden of persuasion remains with
plaintiffs when defendants come forward with evidence of solvency).

### 3.   THIRD ELEMENT – INSOLVENCY – FACTORS

To assist you in assessing the solvency of Mr. and Mrs. Priore, let me first define certain terms used in Section 273.

A "creditor" is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.

A claim is "matured" when it has become absolutely due without contingency, although not necessarily liquidated nor presently payable.

A claim is "liquidated" when it is ascertained; fixed; settled; made clear or manifest.

A claim is "contingent" if it has not accrued and is dependent on some future event that may never happen.

A person is considered "insolvent" under the Debtor and Creditor Law when "the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

The mere existence of a contingent debt, without more, is insufficient to support a finding that such a debt represented a "probable liability" within the meaning of the Debtor and Creditor Law.  In order to constitute a "probable liability," there must be evidence that it is more likely than not, at the time of the challenged conveyance, that liability will be imposed and, if so, in what amount.  If you find that the SEC has failed to present such evidence, then your verdict should be in favor of defendants.  If, however, you find that the SEC has presented evidence of "probable liability," and the amount of that probable liability, then you must compare that with the present fair salable value of their assets at the time of the transfers to determine whether they were "insolvent."

*See* N.Y. Debt. & Cred. Law § 270 (defining "creditor"); *Shelly v. Doe*, 660 N.Y.S.2d 937, 940 (Cnty. Ct. 1997) (defining "matured," "liquidated," and "contingent"), *aff'd as modified*, 671 N.Y.S.2d 803 (1998); *Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F. Supp. 2d 341, 347 (N.D.N.Y. 2001) (defining a "contingent" claim); N.Y. Debt. & Cred. Law § 271 (definition of "insolvency"); *see Staten Island Sav. Bank v. Reddington*, 687 N.Y.S.2d 707, 709 (2nd Dep't 1999) (discussing the meaning of "probable liability" under the Debtor and Creditor Law); *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 380 (S.D.N.Y. 2003) *aff'd*, 99 F. App'x 274 (2d Cir. 2004) (finding that for purposes of assessing "probable liability," tort claims for personal injuries were not "debts" in the sense that they were liquidated amounts); *Allen Morris Commercial Real Estate Services Co. v. Numistatic Collectors Guild, Inc.*, 90 CIV. 264 (SWK), 1993 WL 183771, at *8 (S.D.N.Y. May 27, 1993) ("The statute's reference to 'probable liability' includes contractual contingent liabilities such as guaranties and lease obligations."); *Cont'l Bank N.A. v. Modansky*, 159 B.R. 129, 133 (S.D.N.Y. 1993) *aff'd sub nom. Cont'l Bank v. Modansky*, 41 F.3d 1501 (2d Cir. 1994) ("Under New York law, a guarantee of a loan is a probable liability which must be considered in determining a person's solvency at the time of a transfer under DCL § 273."); *F.D.I.C. v. Marke Painting Co.,* 88 CIV. 8675 (JSM), 1992 WL 212372, at *3 (S.D.N.Y. Aug. 25, 1992) (amount due on promissory note guaranteed by debtor is a contingent debt that must be considered as part of his "probable liability"); *Shelly v. Doe*, 671 N.Y.S.2d 803, 806 (3d Dep't 1998) (holding that tortfeasor's "probable debt" to victim by virtue of tortious conduct should not be considered for fraudulent conveyance determination because it was "entirely speculative" at time of transfer); *see also Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d 134, 174 (W.D.N.Y. 2003) (finding that evidence had been proffered as to both the probability that a contingent liability attached as well as the amount of the liability).

## B.   N.Y. DEBTOR AND CREDITOR LAW – SECTION 275

### 1.   SECTION 275 – ELEMENTS AND BURDEN OF PROOF

Like Section 273, Section 275 also concerns constructive fraud and it provides:

> Every conveyance made and every obligation incurred without fair
> consideration when the person making the conveyance or entering
> into the obligation intends or believes that he will incur debts
> beyond his ability to pay as they mature, is fraudulent as to both
> present and future creditors.

Thus, to establish a fraudulent conveyance under section 275, the plaintiff must establish

the following elements by a preponderance of the evidence: first, that the transfer was made for

less than fair consideration, and second, that Mr. and Mrs. Priore intended or believed that they

would incur debts beyond their ability to pay them as they matured.

*See Geltzer v. Borriello (In re Borriello)*, 329 B.R. 367, 373 (Bankr. E.D.N.Y. 2005) (stating the
elements of a claim under Section 275); *In re Palermo*, 2011 WL 3874866, at *7 n.8 (S.D.N.Y.
Sept. 2, 2011) (elements of a claim under Section 275 must be proven by a preponderance of the
evidence); *In re Jacobs*, 394 B.R. 646, 660 (Bankr. E.D.N.Y. 2008) (citing *Lippe v. Bairnco
Corp.*, 249 F. Supp. 2d 357, 376 (S.D.N.Y. 2003)) (same).

## 2.        SECTION 275 – FACTORS

As I explained previously with respect to Section 273, the question whether there was consideration is not at issue here.  Thus, the only question for you to decide is whether Mr. and Mrs. Priore had an actual subjective intention or belief—at the time they made the property transfers—that they would incur debts beyond their ability to pay them as they matured.

*See U.S. v. 58th St. Plaza Theatre, Inc.,* 287 F. Supp. 475, 498 (S.D.N.Y. 1968) (finding that conveyances were fraudulent under Section 275 because transferors had actual belief that they would incur debts beyond their ability to pay); *see also Shelly v. Doe*, 660 N.Y.S.2d 937, 944 (Cnty. Ct. 1997) *aff'd as modified*, 671 N.Y.S.2d 803 (1998) (denying claim under Section 275 due to insufficient proof "showing [transferor's] knowledge of inability to pay debts as they mature and become due").

C.     N.Y. DEBTOR AND CREDITOR LAW – SECTION 276

In contrast to Sections 273 and 275, Section 276 concerns actual fraud and it provides:

> Every conveyance made and every obligation incurred with actual
> intent, as distinguished from intent presumed in law, to hinder,
> delay, or defraud either present or future creditors, is fraudulent as
> to both present and future creditors.

For purposes of this claim, it is the intent of the transferors—Mr. Priore with respect to

the New York property and both Mr. and Mrs. Priore with respect to the Massachusetts

property—and not that of the transferee that matters.

*See United States v. McCombs,* 30 F.3d 310, 328 (2d Cir. 1994) (actual intent is the relevant
consideration under Section 276); *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.,* 234 B.R. 293,
318 (Bankr. S.D.N.Y. 1999) (citing *HBE Leasing Corp. v. Frank,* 61 F.3d 1054, 1059 n.5 (2d
Cir.1995)) (intent of transferor, rather than transferee, is dispositive).

1.      **SECTION 276 – ELEMENTS AND BURDEN OF PROOF**

The burden of proving actual intent here is on the SEC.  To prevail on a claim under

Section 276, the SEC must prove the following elements by clear and convincing evidence: first,

that the property transferred has value out of which the SEC could have realized a portion of its

claim; second, that the property was transferred or disposed of by Mr. and Mrs. Priore; and third,

that the transfer was done with actual intent to defraud.


*See MFS/Sun Life Trust High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 934–35 (S.D.N.Y. 1995) (evidentiary standard for a claim under Section 276 is clear and convincing evidence); *In re Flutie New York Corp.*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004) (stating the elements of a claim under Section 276); *In re Kovler*, 249 B.R. 238, 243 (Bankr. S.D.N.Y. 2000) (same).

## 2.   SECTION 276 – FACTORS

Actual intent, which concerns the parties' state of mind, need not be proven by direct evidence; you may infer actual intent to defraud, or the lack of actual intent to defraud, from the circumstances surrounding the transfers.  However, actual intent to defraud must be based on fact and cannot rest on mere suspicion.

*See In re Sharp Int'l Corp.,* 403 F.3d 43, 56 (2d Cir. 2005) (discussing circumstances commonly associated with fraudulent transfers that may give rise to an inference of actual intent); *In re Kovler*, 249 B.R. 238, 244 (Bankr. S.D.N.Y. 2000) (actual intent must be based on fact, not mere suspicion).

**XI.    FRAUDULENT TRANSFER – 28 U.S.C. § 3304(b)**

Plaintiff also alleges that Mr. and Mrs. Priore fraudulently transferred property in violation of federal law.

Plaintiff has brought claims related to these transactions under two separate provisions of 28 U.S.C. § 3304.  I will now read each section to you in turn, and explain the essential elements that plaintiff must prove to establish its claims.

### A.      SECTION 3304(B)(1)(A) – ELEMENTS AND FACTORS

Section 3304(b)(1)(A) provides:  "[A] transfer made or obligation incurred by a debtor is

fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is

made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation . . .

with actual intent to hinder, delay, or defraud a creditor . . . ."

To prevail on a claim under Section 3304(b)(1)(A), the SEC must prove the following

elements: first, that Mr. and Mrs. Priore made a transfer or incurred an obligation, and second,

that they did so with actual intent to hinder, delay, or defraud a creditor.

Like Section 276 of New York's Debtor and Creditor Law that I just described to you,

this provision concerns actual intent to defraud.  You may consider the circumstances

surrounding the transfers in determining whether Mr. and Mrs. Priore acted with or without

actual intent to defraud.

---

*See* 28 U.S.C. § 3304(b)(2) (setting forth circumstances that may be evidence of actual
fraudulent intent); *U.S. v. Forbes*, 740 F. Supp. 2d 326, 332–33 (D. Conn. 2010) (concluding that
although the transfer at issue displayed several of the badges of fraudulent intent, "a fact-finder
could reasonably infer that Forbes transferred the FG entities for non-fraudulent reasons" (*i.e.*,
for tax purposes only)); *U.S. v. Moore*, 156 F. Supp. 2d 238, 244–45 (D. Conn. 2001)
(concluding that it could not say, as a matter of law, that defendants acted with "actual intent to
hinder, delay, or defraud a creditor" despite the fact that several of the section 3304(b)(2) factors
were present).

## B.      SECTION 3304(B)(1)(B) – ELEMENTS AND FACTORS

Section 3304(b)(1)(B) provides:  "[A] transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor . . . intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

To prevail on a claim under Section 3304(b)(1)(B), the SEC must prove the following elements: first, that Mr. and Mrs. Priore made a transfer or incurred an obligation; second, that the Priores did not receive reasonably equivalent value in exchange for the transfer or obligation; and third, that at the time of the transfer Mr. and Mrs. Priore intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

If you find that the SEC has failed to establish that at the time of the transfers Mr. and Mrs. Priore had the actual subjective intention or belief, or reasonably should have believed, that they would incur debts beyond their ability to pay as they became due, then, on that basis alone, you must enter a verdict in favor of defendants.

*See U.S. v. Sherrill*, 626 F. Supp. 2d 1267, 1272–73 (M.D. Ga. 2009) (explaining the gravamen of section 3304(b)(1)(B) and relevant factors to be considered).

## XII.   CLOSING COMMENTS

### A.   DUTY TO DELIBERATE

The verdict must represent the considered judgment of each of you.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment.  You must decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

*See* 3 O'Malley, et al., *Federal Jury Practice and Instructions* § 106.01 (6th ed. 2011).

## B.    COMMUNICATION WITH COURT AND JURY DURING JURY'S DELIBERATIONS

If it becomes necessary during your deliberations to communicate with me, you may send a note by a bailiff, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me by any means other than a signed writing, and I will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

You will note from the oath about to be taken by the bailiffs that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person—not even me—how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

*See* 3 O'Malley, et al., *Federal Jury Practice and Instructions* § 106.08 (6th ed. 2011).

## C.    RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement

on a verdict, your foreperson must fill in your answers to the written questions, sign and date it,

and advise the court that you are ready to return to the courtroom.

*See Manual of Model Civil Jury Instructions for the Ninth Circuit*, 2007 Edition, Section 3.3;
Pattern Jury Instructions of the District Judges of the Fifth Circuit, Civil Cases, Instruction No.
2.12 (1999).

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:    ___/s/ Nathan P. Kitchens_____
Dane Butswinkas (admitted *pro hac vice*)
Barry S. Simon (admitted *pro hac vice*)
Margaret A. Keeley (admitted *pro hac vice*)
Malachi B. Jones, Jr. (admitted *pro hac vice*)
Anne M. Rucker (admitted *pro hac vice*)
Brian Fleming (admitted *pro hac vice*)
Nathan P. Kitchens (admitted *pro hac vice*)
Eun Young Choi (EC 1213)
725 12th Street, N.W.
Washington, DC  20005
(202) 434-5000
(202) 434-5029 (fax)

*Attorneys for Defendants ICP Asset Management,*
*LLC, ICP Securities, LLC, Institutional Credit*
*Partners, LLC, and Thomas C. Priore*

Dated:  January 27, 2012

## <u>CERTIFICATE OF SERVICE</u>

I, Nathan P. Kitchens, hereby certify that on the 27th day of January 2012, I caused the foregoing ICP DEFENDANTS' PROPOSED JURY INSTRUCTIONS to be served on all counsel of record via ECF.


    __/s/ Nathan P. Kitchens_____
    Nathan P. Kitchens (admitted *pro hac vice*)