UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SECURITIES AND EXCHANGE COMMISSION,

                      Plaintiff,

              -against-                                    10 Civ. 4791 (LAK)

ICP ASSET MANAGEMENT, LLC, et al.,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

| | |
|---|---|
| Joseph O. Boryshansky | Nathan P. Kitchens |
| Mark S. Germann | Margaret A. Keeley |
| Joshua R. Pater | Anne M. Rucker |
| Andrew M. Calamari | Barry S. Simon |
| Celeste A. Chase | Brian J. Fleming |
| George S. Canellos | Dane H. Butswinkas |
| Susannah M. Dunn | Eun Y. Choi |
| Jack Kaufman | Malachi B. Jones, Jr. |
| SECURITIES AND EXCHANGE COMMISSION | Thomas J. Roberts |
| *Attorneys for Plaintiff* | WILLIAMS & CONNOLLY LLP |
| | |
| | Charles R. Jacob, III |
| | John G. Moon |
| | MILLER & WRUBEL, P.C. |
| | *Attorneys for ICP Defendants & Thomas Priore* |

LEWIS A. KAPLAN, *District Judge.*

        Thomas Priore ("Priore") and Institutional Credit Partners, LLC, ICP Asset Management, LLP, and ICP Securities, LLC (the three latter collectively, "ICP Defendants") move for partial summary judgment dismissing the first through sixth and ninth claims of the amended

complaint.

The motion is based almost entirely on a contention that the SEC cannot prove that the transactions complained of were domestic and that the pertinent statutes therefore do not apply to their alleged conduct in light of *Morrison v. National Australia Bank Ltd.*[1] Priore and the ICP Defendants argue also that they are entitled to summary judgment dismissing (1) claims arising from an alleged failure to disclose information to certain parties to whom, they argue, they owed no duty to disclose, and (2) certain unpleaded allegations of fraud that the SEC allegedly did not raise until it responded to recent interrogatories.

I.  *Summary Judgment Standard*

On a summary judgment motion, the moving party must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[2] A "genuine issue" of fact exists if there is evidence from which a reasonable jury could decide the fact in favor of the non-movant.[3] The court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."[4]

---

[1] 130 S. Ct. 2869 (2010).

[2] *See Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999); FED. R. CIV. P. 56(c).

[3] *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009) (citing *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

[4] *Id.* (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)).

*II.*     Morrison v. National Australia Bank Ltd.

The first claim rests on the Securities Act of 1933 (the "Securities Act"),[5] the second, third, and ninth claims rest on the Securities Exchange Act of 1934 (the "Exchange Act"),[6] and the fourth through sixth claims rest on the Investment Advisers Act of 1940 (the "Advisers Act").[7] Priore and the ICP Defendants argue that summary judgment dismissing the first through sixth and the ninth claims of the amended complaint is warranted because the SEC cannot prove that the transactions complained of were domestic within the parameters of *Morrison*.[8] Although *Morrison* involved the Exchange Act only, its holding is relevant to all of these claims. The Court briefly summarizes *Morrison* and then analyzes each group of claims.

In *Morrison*, the Supreme Court considered whether foreign plaintiffs had a cause of action under Section 10(b) of the Exchange Act for an alleged securities fraud perpetrated against them by both foreign and domestic defendants with respect to transactions in foreign securities on a foreign stock exchange.[9] It approached the question in two steps.

The Court first concluded that the Exchange Act is silent on the issue of extraterritorial application and therefore does not rebut the presumption against extraterritorial effect.[10]

---

[5] 15 U.S.C. § 77a *et seq.*

[6] *Id.* § 78a *et seq.*

[7] *Id.* § 80b-1 through b-21.

[8] DI 101, at 7-32.

[9] *Morrison*, 130 S. Ct. at 2875.

[10] *Id.* at 2881-83.

4

It then considered whether the plaintiffs' proposed application of the Exchange Act on the facts before it would have been extraterritorial. It reasoned that the antifraud provisions of the Exchange Act apply only to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities."[11]

### A.  Exchange Act Claims

This motion implicates the issue of when "transactions in other securities" are domestic. In short, Priore and the ICP Defendants argue that "[t]he *Morrison* transaction test is not satisfied by the conduct of entities in the United States facilitating private transactions between foreign funds."[12] They rely on several cases from this district including *Absolute Activist Value Master Fund Ltd. v. Homm*.[13] Since Priore and the ICP Defendants filed this motion, however, *Absolute Activist* has been reviewed by the Second Circuit in *Absolute Activist Value Master Fund Ltd. v. Ficeto*.[14]

In *Absolute Activist*, the Circuit reversed in part and affirmed in part the district court decision upon which movants rely. It held that a "transaction[] in other securities" is domestic "when the parties incur irrevocable liability to carry out the transaction within the United States or when title is passed within the United States."[15] The evidence before this Court is sufficient to at

---

[11] *Id.* at 2884.

[12] DI 101, at 14.

[13] No. 09 Civ. 08862 (GBD), 2010 WL 5415885 (S.D.N.Y. Dec. 22, 2010).

[14] 677 F.3d 60 (2d Cir. 2012).

[15] *Id.*

5

least permit the inference that the trades complained of were domestic transactions within the meaning of *Absolute Activist*. Accordingly, the motion must be denied with respect to the Exchange Act claims.

### B. Securities Act Claims

The elements of a claim under Section 17(a) of the Securities Act are essentially the same as those under Section 10(b) of the Exchange Act.[16] Many courts – including the Second Circuit – analyze claims under both statutes together.[17]

Since *Morrison*, three courts in this district have applied its holding to claims under the Securities Act.[18] In the most recent, Judge Holwell wrote in *In re Vivendi Universal* that "the Court agrees with [the two prior] decisions and concludes that *Morrison* permits Securities Act claims only 'in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States.'"[19] I join this nascent consensus and conclude that the *Morrison* analysis for the Securities Act claim is identical that applicable to claims under the Exchange Act. Accordingly, the motion is denied with respect to the

---

[16] *See SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999).

[17] *See e.g.*, *Republic Tech. Fund, Inc. v. Lionel Corp.*, 483 F.2d 540, 545, 551 (2d Cir. 1973) (analyzing Rule 10b-5 and Section 17 claims together and noting that it must determine whether defendant made any material misstatements or omissions).

[18] *In re Vivendi Universal, S.A., Sec. Litig.*, __ F. Supp. 2d __, 2012 WL 280252, at *5 (S.D.N.Y. Jan. 27, 2012); *SEC v. Goldman Sachs & Co.*, 790 F. Supp.2d 147, 164 (S.D.N.Y. 2011) (applying *Morrison* to Section 17(a) of the Securities Act); *In re Royal Bank of Scot. Grp. PLC Sec. Litig.*, 765 F. Supp. 2d 327, 338 & n.11 (S.D.N.Y. 2011).

[19] *In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 280252, at *5 (quoting *Morrison*, 130 S. Ct. at 2888).

6

Securities Act claim as well.

### C.   Advisers Act Claims

Priore and the ICP Defendants argue that *Morrison* bars the Advisers Act claims because the statute does not "regulate the activity of investment advisers with respect to foreign clients engaged in foreign transactions."[20]  In support of this contention, they note that all of the investment vehicles at issue in this case are foreign entities.[21]

The fact that these entities are located outside of the United States does not aid the defendants' *Morrison* argument.  Since *Morrison*, four courts have considered its effect on claims under the Advisers Act.[22]  While three of these cases discussed *Morrison* in the Exchange Act context and considered the Advisers Act claims separately,[23] the most recent case from this district – *SEC v. Gruss*[24] – analyzed *Morrison*'s application to claims under the Advisers Act.[25]

---

[20] DI 101, at 28.

[21] ICP 56.1 St. ¶¶ 1-17.

[22] *See S.E.C. v. Gruss*, __ F. Supp. 2d __, 2012 WL 1659142 (S.D.N.Y. May 9, 2012); *Valentini v. Citigroup, Inc.*, No. 11-1355 (LBS), 2011 WL 67B0915 (S.D.N.Y. Dec. 27, 2011); *SEC v. Ficeto*, No. 11-1638 (GHK), 2011 WL 7445580 (C.D. Cal. Dec. 20, 2011); *Horvath v. Banco Comercial Portugues, S.A.*, No. 10-4697 (GBD), 2011 WL 666410 (S.D.N.Y. Feb. 15, 2011).

[23] *See Valentini*, 2011 WL 6780915, at *15 (dismissing the Advisers Act claim where defendant failed to establish the necessary contract or relationship to confer the right of action); *Ficeto*, 2011 WL 7445580, at *4 (holding that the Advisers Act claim was not fatally defective because the clients were under the de facto control of the broker-dealer co-owner); *Horvath*, 2011 WL 666410, at *5 (noting the Advisers Act claim was based on actions that occurred after the parties contracted and thus was subject to the statute).

[24] __ F. Supp. 2d __, 2012 WL 1659142, at *1.

[25] *Id.* at *6-*11.

7

The defendant in *Gruss* asserted the same argument that Priore and the ICP Defendants raise here – that "Section 206 contains no affirmative intention to give the statute an extraterritorial effect, and thus under *Morrison*, claims predicated on fraud must only be directed at domestic clients because the focus of the IAA is not upon the place where the fraud allegedly originated but upon the location of the client."[26]  The *Gruss* court disagreed.

It noted that: (1) "[t]he purpose of the [Advisers Act] is to regulate and 'to prevent fraudulent practices by investment advisers,'"[27] (2) "Section 206 is titled 'Prohibited transactions by investment advisers,'"[28] (3) the Advisers Act does not allow a private cause of action, which demonstrates further that the focus is on the adviser and not the client,[29] and (4) the legislative history of the Advisers Act, as analyzed by the Supreme Court, shows that the "'legislation [was designed] to prevent fraudulent practices by investment advisers.'"[30]  Thus, it concluded that the "text and regulatory structure [demonstrate that] the focus of the [Advisers Act] is clearly on the investment adviser and its actions" – not the location of the client.[31]  This Court agrees.

Accordingly, the evidence provided by Priore and the ICP Defendants that their

---

[26] *Id.* at *6.

[27] *Id.* at *8 (quoting *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 195 (1963)).

[28] *Id.* at *9 (quoting 15 U.S.C. § 80b-6).

[29] *Id.* (citing *Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 53 (2d Cir. 2009) ("[S]tatutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons."), *cert. denied*, 130 S. Ct. 3513 (2010)).

[30] *Id.* (quoting *Capital Gains*, 375 U.S. at 195).

[31] *Id.* at *9.

8

clients were foreign entities does not entitle them to summary judgment dismissing the Advisers Act claims. Indeed, the evidence before the Court is sufficient to at least permit the inference that the conduct complained of was domestic and violated the Advisers Act.

III. *Duty to Disclose*

Priore and the ICP Defendants next argue that the claims based on "fraud by omission to noteholders and 'controlling parties'" should be dismissed because they owed no duty to disclose to those parties.[32] They rely almost exclusively on a D.C. Circuit case – *Goldstein v. SEC*[33] – which held that a hedge fund investment adviser owes fiduciary duties only to the fund itself – not to the fund's investors – because owing fiduciary duties to both the hedge fund and the hedge fund's investors may cause conflicts of interest.[34]

While Priore and the ICP Defendants may be correct that, under *Goldstein*, they did not necessarily owe fiduciary duties to noteholders and controlling parties, they fail to show that there is no genuine issue of material fact regarding what duties they owed, if any, to the noteholders and controlling parties. Indeed, the parties dispute whether a duty to disclose certain information

---

[32] DI 101, at 32-36.

[33] 451 F.3d 873 (D.C. Cir. 2006).

Moreover, Priore and the ICP Defendants assert that the Offering Circulars and the Collateral Management Agreements suggest that no fiduciary duty existed between them and the noteholders or controlling parties of the investment vehicles.

[34] *Id.* at 881 ("It simply cannot be the case that investment advisers are the servants of two masters."); *see also SEC v. Northshore Asset Mgmt.*, No. 05 Civ. 2192 (WHP), 2008 WL 1968299, at *6 (S.D.N.Y. May 5, 2008) ("Because under the Advisers Act, Saludtti's [*sic*] clients were the Ardent Entities, a failure to disclose information or misrepresentations to the Ardent Entities investors cannot form the basis for a claim that Saldutti breached his fiduciary duties to the Ardent Entities.").

9

existed: (1) by virtue of the nature of the relationships,[35] (2) "to prevent existing disclosures from being misleading,"[36] or (3) by reason of terms in the Indentures and Collateral Management Agreements.

As Priore and the ICP Defendants have not shown the lack of a genuine issue of material fact regarding what, if any, duties of disclosure were owed to the noteholders and controlling parties, partial summary judgment dismissing those claims would be inappropriate.

IV.   "Unpleaded" Allegations of Fraud

Finally, Priore and the ICP Defendants argue that they are entitled to summary judgment dismissing several alleged misstatements and omissions made by ICP to prospective investors KPMG and Blackrock as well as other alleged omissions involving the options that ICP allegedly considered as an alternative to the forward sales agreement.[37] They argue that they would be prejudiced by these new allegations because they were filed at the close of discovery and hamper their ability to defend against them.

Movants' argument actually has nothing to do with summary judgment which, when granted, results in a decision on the merits of the dispute. Rather, it concerns such matters as

---

[35] *See United States v. Lay*, 612 F.3d 440, 446-47 (6th Cir. 2010) (stating that *Goldstein* "did not hold that no hedge fund adviser could create a client relationship with an investor" and noting that a fiduciary duty might arise based on the nature of the relationship).

[36] DI 117, at 24 (quoting *Freidus v. ING Groep N.V.*, 736 F. Supp. 2d 816, 826 (S.D.N.Y. 2010)).

[37] DI 101, at 37.

These allegations are outlined by the SEC in its response to interrogatories. *See id.* at 36-37; Kitchens Decl. [DI 102], Ex. 37, ¶¶ 7(c)-(d), 8, 29, 34-35, 38.

whether the SEC adequately pleaded the theories now relied upon, whether (if it did not) it should be permitted to amend to do so now, whether it improperly failed to disclose them during discovery, and similar matters. Accordingly, the Court will treat this aspect of the motion as seeking to preclude the SEC from offering evidence of or arguing these matters at trial.

At this stage of the game, the Priore and the ICP Defendants are fully on notice of what the SEC intends to prove. They have advanced no persuasive claim that they were prejudiced by late disclosure, if indeed that occurred. The start of the trial is nearly three months in the future.

In all the circumstances, the Court would grant leave to amend, either under Rule 15(a) or 15(c), if that were necessary and in any case would decline to foreclose this line of proof and argument at trial. Accordingly, this aspect of the motion too is denied.

*Conclusion*

For these reasons, Priore and the ICP Defendants' motion for partial summary judgment [DI 100] is denied.

SO ORDERED.

Dated:      June 21, 2012

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)